Kerry K. Fennelly (SBN 232621)
kfennelly@kraw.com
Valentina S. Mindirgasova (SBN 272746)
vmindirgasova@kraw.com
Kraw Law Group, APC
1017 East Grand Avenue
Escondido, CA 92025
(760) 747-1100 tel
(760) 747-1188 fax

Attorneys for Plaintiffs,
GCIU-Employer Retirement Fund and
Board of Trustees of the
GCIU-Employer Retirement Fund

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND AND BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND,<br><br>Plaintiffs,<br>v.<br><br>SERVICE PRESS, INC., a California corporation,<br><br>Defendants. | CASE NO. 2:20-cv-04897<br><br>**COMPLAINT**<br><br>(1) Collection of Withdrawal Liability pursuant to ERISA § 4221(b)(1) (29 U.S.C. § 1401(b)(1));<br>(2) Payroll Audit Scheduling |

## <u>COMPLAINT</u>

Plaintiffs, GCIU-Employer Retirement Fund and Board of Trustees of the GCIU-Employer Retirement Fund, for causes of action against Defendant Service Press, Inc., allege as follows:

1

COMPLAINT

## JURISDICTION AND VENUE

1.     This is an action for collection of withdrawal liability, interest, and attorneys' fees incurred by an employer as a result of a withdrawal from a multiemployer pension plan, and an action to compel the production of an employer's books and records, for the purpose of determining the accuracy of its reporting to the multiemployer pension plan of the time worked by its employees. These claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001 *et seq*.

2.     This court has jurisdiction over this action under ERISA Sections 502(e), 502(f), and 4301(c), 29 U.S.C. §§ 1132(e), 1132(f), and 1451(c).

3.     Venue lies in this Court under ERISA Sections 502(e)(2) and 4301(d), 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the GCIU-Employer Retirement Fund ("Fund") is administered in Los Angeles County, California.

## PARTIES

4.     Plaintiff Fund is a multiemployer pension plan within the meaning of ERISA Sections 3(37) and 4001(a)(3), 29 U.S.C. §§ 1002(37) and 1301(a)(3).

5.     Plaintiff Board of Trustees of the GCIU-Employer Retirement Fund ("Board of Trustees") is comprised of the present trustees who are the named fiduciaries of the Fund within the meaning of ERISA Section 402(a), 29 U.S.C. §1102(a), and is the plan sponsor of the Fund within the meaning of ERISA Sections 3(16)(B)(iii) and 4001(a)(10), 29 U.S.C. §§ 1002(16)(B)(iii) and 1301(a)(10). The Board of Trustees administers the Fund in Los Angeles County, California.

6.     Pursuant to ERISA Sections 502(a)(3) and 4301(a)(1), 29 U.S.C. §§ 1132(a)(3) and 1451(a)(1), the Board of Trustees is authorized, as a named fiduciary, to bring this action on behalf of the Fund, its participants and beneficiaries.

7.     The Plaintiff Fund is also authorized to bring this action in its own name pursuant to a provision contained within Article VIII, Section 18 of the Plaintiff Fund's Trust Agreement, which permits all legal actions to be prosecuted in the name of the

2

COMPLAINT

Fund. A true and correct copy of the Fund's Trust Agreement is attached hereto as Exhibit 1.

8.    Defendant Service Press, Inc. ("Defendant") is an active company that was organized under the laws of the State of California.

9.    At all times relevant to this action, Defendant has been an "employer" as the term is defined by ERISA Section § 3(5), 29 U.S.C. § 1002(5), and was engaged in an industry affecting commerce, as defined by section 301(a) of the Labor-Management Relations Act, 29 U.S.C. § 185(a).

## FIRST CAUSE OF ACTION

(Default on Payment Obligation for Withdrawal Liability)

10.    Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 9 of this Complaint as though fully set forth herein.

11.    During all relevant times, Defendant was a signatory to a Collective Bargaining Agreement ("CBA") with the Teamsters District Council 2 under which it was required to make contributions on behalf of its covered employees. A true and correct copy of the CBA and addendum is attached hereto as Exhibit 2.

12.    Defendant's obligation to contribute to the Plaintiff Fund ceased in 2018 due to the termination of its CBA and thus its obligation to contribute to the Fund.

13.    As a result, Plaintiffs provided Defendant with a Notice of 2018 Complete Withdrawal Liability and Demand for Payment ("Notice and Demand") via certified mail, dated January 2, 2020, pursuant to ERISA Sections 4202(2) and 4219(b)(1), 29 U.S.C. §§ 1382(2) and 1399(b)(1).

14.    The Notice and Demand included a detailed calculation of how the amount of the withdrawal liability assessment was calculated by the actuary, and provided a payment schedule for the withdrawal liability assessment in accordance with the requirements of ERISA Section 4219(c), 29 U.S.C. § 1399(c). A true and correct copy of the Notice and Demand with the detailed calculations is attached hereto as Exhibit 3.

COMPLAINT

15.     The Notice and Demand informed Defendant's right to make a lump sum present value payment of the entire amount or make payments according to a schedule. In accordance with ERISA and the Fund's Withdrawal Liability Procedures, the Fund's actuary determined that under the payment schedule, Defendant was to make 240 monthly payments of $102.50 or $18,857 in a present value lump sum.

16.     Defendant did not exercise its rights under ERISA Section 4219(b)(2)(A), 29 U.S.C. § 1399(b)(2)(A), to ask Plaintiffs to review the assessment, to identify any inaccuracies in the determination of the amount of the assessment, or to furnish any additional information to the Plaintiffs.

17.     Defendant did not initiate arbitration pursuant to ERISA Section 4221(a)(1), 29 U.S.C. § 1401(a)(1) and the time to initiate arbitration has expired. Consequently, the amounts demanded by the Fund are due and owing pursuant to ERISA Section 4221(b)(1), 29 U.S.C. § 1401(b)(1).

18.     Defendant failed to make any payments to Plaintiffs, and as a result, on March 4, 2020, Plaintiffs provided via certified mail a Notice of Failure to Pay Withdrawal Liability and Demand for Cure ("Demand for Cure") to Defendants in accordance with ERISA Section 4219(c)(5), 29 U.S.C § 1399(c)(5). A true and correct copy of the Demand for Cure is attached hereto as Exhibit 4.

19.     Defendant's failure to make the required withdrawal liability payments to Plaintiffs has caused it to be in default within the meaning of ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5).

20.     Defendant's default within the meaning of ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5) results in the entire withdrawal liability assessment to be due and owing.

21.     Plaintiffs' actuary has calculated that the full assessment of withdrawal liability is $127,728.

22.     The failure to pay its withdrawal liability subjects an employer to interest, attorney's fees and costs.

4

COMPLAINT

23.     By reason of the foregoing, Defendant is indebted to Plaintiffs in the sum of $127,728, plus interest, attorneys' fees, and costs.

## SECOND CAUSE OF ACTION

(Audit of Books and Records)

24.     The allegations of Paragraphs 1 through 23 are incorporated by reference as if fully restated.

25.     Under Article IX, Section 2 and 3 of the Trust Agreement governing the Plaintiff Fund, Defendant is contractually liable to timely report on a monthly basis the hours worked by its employees performing bargaining unit work and to pay contributions to the Plaintiff Fund accordingly.

26.     Under Article IX, Section 5 of the Plaintiff Fund's Trust Agreement, Defendant is also required to permit the Plaintiff Fund to review its books and records, including its payroll records, relating to hours worked by all employees, including union, non-union, bargaining unit, and non-bargaining unit employees to confirm that monthly contributions are being made in accordance with the terms of the CBA.

27.     Plaintiffs requested an audit covering the period of November 1, 2015 through September 30, 2018, to determine whether Defendant accurately reported the number of hours worked by its employees.

28.     Defendant has not provided Plaintiffs with the requisite books and records.

29.     Defendant is thus in breach of Plaintiffs' Trust Agreement and must be ordered to produce its books and records for Plaintiffs' review and audit, and to pay all attorneys' fees and costs incurred in obtaining that audit.

WHEREFORE, Plaintiffs request the following relief:

(a) On Plaintiffs' First Cause of Action, a judgment against Defendant, and on behalf of Plaintiffs, pursuant to § 4301(b) of ERISA, 29 U.S.C. § 1451(b), for:

(i)     the past due withdrawal liability payment of $127,728;

COMPLAINT

    (ii)  interest in accordance with the prevailing market rate pursuant to § 4219(c)(6) of ERISA, 29 U.S.C. § 1399(c)(6), on the total amount of unpaid withdrawal liability due and owing from March 2, 2020 until paid;

    (iii)  Plaintiffs' reasonable attorneys' fees and costs of the action incurred herein in accordance with the Trust Agreement and ERISA Sections 502(g)(2)(D) and 4301(e), 29 U.S.C. §§ 1132(g)(2)(D) and 1451(e); and

    (iv)  Such other legal and equitable relief as the Court deems appropriate.

  (b) On Plaintiffs' Second Cause of Action, judgment against Defendant, and on behalf of Plaintiffs:

    (i)  Requiring it to produce its books and records covering the period of November 1, 2015 through September 30, 2018 for Plaintiffs' review and audit;

    (ii)  Plaintiffs' reasonable attorneys' fees and costs of the action; and

    (iii)  Such other legal and equitable relief as the Court deems appropriate.

Dated: June 2, 2020     /s/ Valentina S. Mindirgasova
           Kerry K. Fennelly
           Valentina S. Mindirgasova
           Kraw Law Group, APC
           1017 East Grand Avenue
           Escondido, CA 92025
           (760) 747-1100
           (760) 747-1188
           kfennelly@kraw.com
           vmindirgasova@kraw.com

           Attorneys for Plaintiffs

COMPLAINT

# EXHIBIT 1

GCIU-Employer Retirement
Fund, et. al. v. Service Press, Inc.

EXHIBIT 1 to COMPLAINT - 7



# GCIU-EMPLOYER RETIREMENT FUND

## Trust Agreement

**Effective January 1, 1976**

**As Revised and Restated December 1, 2012**

# TABLE OF CONTENTS

PREAMBLE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARTICLE I — DECLARATION OF TRUST  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    1. Name  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    2. Purpose  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    3. Nature of Trust Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    4. Duration of Trust Fund  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

    5. Term of Trust Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARTICLE II — DEFINITIONS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

ARTICLE III — THE TRUSTEES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    1. The Board of Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    2. Statutory Capacities of Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    3. Agents for Service of Process  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    4. Number of Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    5. Alternate Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    6. Identity of Present Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    7. Appointment of Successor Employer Trustees  . . . . . . . . . . . . . . . . . . . . . . 6

    8. Appointment of Successor Labor Organization Trustees  . . . . . . . . . . . . . . 6

    9. Individuals Disqualified from Serving as Trustees  . . . . . . . . . . . . . . . . . . . .6

    10. Acceptance of Appointment by Trustees  . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    11. Term of Appointment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

    12. Termination of Appointment by Appointing Entity  . . . . . . . . . . . . . . . . . . 6

    13. Termination of Appointment for Failure to Attend Meetings  . . . . . . . . . . 7

    14. Termination of Appointment for Conviction of a Crime  . . . . . . . . . . . . . . .7

    15. Termination of Appointment for Mental Incapacity  . . . . . . . . . . . . . . . . . .7

    16. Resignation of Appointment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    17. Vacancies  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

    18. Return of Books and Records  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

— A —

ARTICLE IV — TRUST FUND ADMINISTRATION . . . . . . . . . . . . . . . . . . . . . . . . 8

    1. Manner of Voting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    2. Constitution of a Quorum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    3. Proxies Prohibited . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    4. Regular Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    5. Special Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    6. Action without a Formal Meeting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    7. Failure of the Trustees to Agree—Arbitration . . . . . . . . . . . . . . . . . . . . . 8

    8. Election of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    9. Duties of Officers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    10. Authorized Signatures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    11. Compensation and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    12. Benefits to Trustees Not Prohibited . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARTICLE V — PARTICIPATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    1. Bargaining Unit Employees Entitled to Participate . . . . . . . . . . . . . . . . 11

    2. Labor Organization Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    3. Non-Bargaining Unit Employees of Participating Employers . . . . . . . . . . 11

    4. Transferred Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    5. Trust Fund Employees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    6. Unauthorized Participation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    7. Sole Proprietors and Partners Ineligible . . . . . . . . . . . . . . . . . . . . . . . . . 12

    8. Participation of Non-Bargaining Unit Employees . . . . . . . . . . . . . . . . . . 12

ARTICLE VI — TRUSTEE RESPONSIBILITIES . . . . . . . . . . . . . . . . . . . . . . . . . 13

    1. General Duty - Receipt of Contributions and Administration of the Retirement Benefit Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    2. Compliance with the Internal Revenue Code . . . . . . . . . . . . . . . . . . . . . 13

    3. Funding Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    4. Basis of Payments to and from Trust Fund . . . . . . . . . . . . . . . . . . . . . . . 13

    5. Application of Trust Fund Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    6. Fiduciary Standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

— B —

7. Deposits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

8. Investments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

9. Specifically Permitted Investments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

10. Title to Investments and Other Assets  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

11. Fidelity Bond  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

12. Records  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

13. Annual Audit  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

14. Annual Actuarial Statement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

15. Plan Description  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

16. Annual Report  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

17. Statements of Accrued Pension Benefits  . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18. Pension Funding Notice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

19. Income Tax Withholding and Reporting  . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

20. Documents to be Examined or Furnished  . . . . . . . . . . . . . . . . . . . . . . . . . . .17

21. Procedure for Establishing Funding Policy  . . . . . . . . . . . . . . . . . . . . . . . . . .18

22. Payments to Pension Benefit Guaranty Corporation  . . . . . . . . . . . . . . . . . .18

23. Benefit Claim and Review Procedures  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

ARTICLE VII — ALLOCATION OR DELEGATION OF TRUSTEE
      RESPONSIBILITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

1. Allocation of Responsibilities to Committees  . . . . . . . . . . . . . . . . . . . . . . . . 19

2. Delegation of Investment Responsibilities  . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

3. Delegation of Other Responsibilities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

4. Review of Performance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

ARTICLE VIII - TRUSTEE POWERS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

1. General Powers  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

2. Specific Powers Discretionary  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

3. Benefit Plan Being Administered  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

4. Amendments to the Benefit Plan  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

5. Means of Providing Benefits  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

6. Facility of Payment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

— C —

7. Administrative Manager . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

8. Banking Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

9. Other Professional and Non-Professional Persons . . . . . . . . . . . . . . . . . . . . 22

10. Obtaining of Necessary Premises, Equipment, and Supplies . . . . . . . . . . . 22

11. Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

12. Borrowing Money . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

13. Reserve Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

14. Payment of Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

15. Refunds of Contributions Erroneously Paid . . . . . . . . . . . . . . . . . . . . . . . . 23

16. Penalties for False or Withheld Information . . . . . . . . . . . . . . . . . . . . . . . . 23

17. Correction of Errors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

18. Prosecution of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . . 24

19. Defense of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

20. Compromise of Legal Actions or Claims . . . . . . . . . . . . . . . . . . . . . . . . . 24

21. Subscription and Participation Agreements . . . . . . . . . . . . . . . . . . . . . . . . 24

22. Participation in Non-Profit Educational Organizations . . . . . . . . . . . . . . . 24

23. Reciprocity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

24. Mergers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

25. Eligible Rollover Plan Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

26. Interpretation and Application of Documents . . . . . . . . . . . . . . . . . . . . . . 25

27. Adoption and Implementation of a Funding Improvement Plan and
    Rehabilitation Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

ARTICLE IX — CONTRIBUTIONS AND COLLECTIONS . . . . . . . . . . . . . . . . . . . 27

1. Contribution Reporting Forms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

2. Contributions Due . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

3. Contribution Due Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

4. Delinquent Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

5. Audit of Employer Books and Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

6. Liquidated Damages, Attorneys Fees, Interest, and Other Charges . . . . . . . 28

7. Additional Liquidated Damages in Event of Court Judgement . . . . . . . . . . 28

— D —

8. Waiver of Charges ............................................28

9. Protection of Employees in Cases of Delinquency ...................28

10. Coordination with Provisions in Collective Bargaining Agreements .....29

ARTICLE X — EMPLOYER WITHDRAWAL LIABILITY ...................30

1. Calculation and Collection of Employer Withdrawal Liability ..........30

2. Determination of Amount of Unfunded Vested Benefits Allocable
to Withdrawing Employer .......................................30

3. Payment of Withdrawal Liability in Monthly Installments .............30

4. Adoption of Administrative Rules and Regulations ...................30

5. Notice of Potential Withdrawal Liability ...........................30

ARTICLE XI — BENEFIT CLAIM, HEARING AND ARBITRATION
PROCEDURES ..........................................32

1. Hearings Required ............................................32

2. Requests for Hearings .........................................32

3. Conduct of Hearings ..........................................32

4. Hearing Rules ...............................................32

5. Arbitration - Mandatory .......................................32

6. Benefit Claim and Review Procedures for a Participating Employee or
Beneficiary .................................................33

7. Sole and Exclusive Remedies ...................................33

ARTICLE XII — LIMITATIONS .......................................34

1. Liabilities and Debts of Trust Fund ...............................34

2. Liabilities and Debts of Participating Parties .......................34

3. Personal Liabilities of Trustees and Fiduciaries .....................34

4. Judgments against Trust Fund ...................................34

5. Participating Parties' Rights ....................................34

6. Cessation of Participation ......................................35

7. Protection of Trust Fund, Contributions, and Benefits ................35

8. Reliance upon Written Documents ...............................35

9. Agents of Trust Fund ..........................................35

— E —

ARTICLE XIII —MISCELLANEOUS ....................................36

    1. Trust Fund Offices ............................................36

    2. Applicable Laws and Regulations ................................ 36

    3. Notices .....................................................36

    4. Severability ................................................36

    5. Title—Words ...............................................36

    6. Information to be Furnished and Distributed .......................36

ARTICLE XIV—AMENDMENTS AND TERMINATION ...................37

    1. Amendments ...............................................37

    2. Termination ................................................37

    3. Allocation upon Termination ...................................37

SIGNATORY PARTIES ..............................................39

— F —

# PREAMBLE

WHEREAS, the signatory parties (or their predecessors in interest) did previously execute a "Retirement Benefit Plan", with an effective date of October 1, 1955, which document created and governed a joint labor-management employee pension benefit fund presently known as the

**GCIU — Employer
Retirement Fund
and**

WHEREAS, said document did also create an employee pension benefit plan presently known as the

**GCIU — Employer
Retirement Benefit Plan
and**

WHEREAS, said document was subsequently amended in several respects, and

WHEREAS, said document was adopted in accordance with the applicable provisions of Section 302(c) of the Labor Management Relations Act of 1947 and applicable provisions of the Internal Revenue Code, and

WHEREAS, the enactment of the Employee Retirement Income Security Act of 1974 mandated the adoption of certain substantive changes in the documents governing employee pension benefit funds and thus required amendment of the existing document, and

WHEREAS, the Trustees have again determined to revise and restate the existing Trust Agreement so as to further take into account contemporary needs and conditions, including amendments which have been made since the September 1, 1999 revision,

NOW THEREFORE, the Trustees and remaining signatory parties do hereby revise and restate the "Trust Agreement", as follows:

— 1 —

# ARTICLE I
## DECLARATION OF TRUST

1.   *Name*

The Trustees and the remaining signatory parties hereby reaffirm the declaration and establishment of a Trust Fund known as the

**GCIU — Employer
Retirement Fund**

The Trustees may hold property, enter into contracts, and in all matters act on behalf of the Trust Fund in such name. The Trust Fund may sue or be sued in such name.

2.   *Purpose*

The purpose of the Trust Fund is to provide an entity to which contributions from participating employers can be paid and through which the Trustees can administer the GCIU—Employer Retirement Benefit Plan for the benefit of the participating employees for whom such contributions have been paid, and their beneficiaries.

3.   *Nature of Trust Fund*

The Trust Fund is a "trust" as contemplated by Section 302(c)(5) of the Labor Management Relations Act of 1947; a "trust" as contemplated by Section 401(a) of the Internal Revenue Code; and a "trust" as contemplated by Section 403(a) of the Employee Retirement Income Security Act of 1974. It is an entity separate and apart from the participating employers, employer associations, and labor organizations.

4.   *Duration of Trust Fund*

The Trust Fund shall continue in existence on an indefinite basis, contemporaneously with the term of this Trust Agreement.

5.   *Term of Trust Agreement*

This revised and restated Trust Agreement shall be effective as of December 1, 2012, and shall continue indefinitely until such time as it may be terminated in accordance with the provisions of Article XIV hereof.

# ARTICLE II
## DEFINITIONS

The following definitions shall govern in this Trust Agreement:

1. "Beneficiary"—any person designated by a participating employee, under the terms of the Retirement Benefit Plan, to receive benefits, if any, upon the death of such participating employee.

2. "Collective bargaining agreement"—a written agreement between a participating employer and a participating labor organization, providing generally for wages, hours, and working conditions, by the terms of which the employer is obligated to make contributions to the Trust Fund on behalf of the bargaining unit employees covered by such an agreement.

3. "Contributions"—the payments which a participating employer is obligated to make to the Trust Fund pursuant to the terms of a collective bargaining agreement, subscription agreement, or participation agreement.

4. "Participating employee"—an individual employed by a participating employer and for whom that employer makes contributions to the Trust Fund, as allowed by the provisions of Article V, Sections 1, 2, 3, 4, and 5 and any individual who formerly was so employed and who has achieved vested or retired status under the terms of the Retirement Benefit Plan.

5. "Participating employer"—any employing entity that is party to a collective bargaining agreement or subscription agreement with a participating labor organization, as allowed by the provisions of Article V, Section 1 hereof. An employing entity may be a sole proprietorship, partnership, unincorporated association, corporation, or joint venture; or the United States of America; or any state, county or municipality; or other public agency, public corporation, or governmental unit.

A participating labor organization, or the Trust Fund, or any related trust fund, shall also be considered as a "participating employer" for the limited purpose of allowing the employees of such entities to participate in the Trust Fund, as permitted by Article V, Sections 2 and 5 hereof.

6. "Participating employer association"—any employer association or multi-employer bargaining group that is party to a collective bargaining agreement with a participating labor organization, as allowed by the provisions of Article V, Section 1 hereof.

7. "Participating labor organization"—Graphic Communications Conference of the International Brotherhood of Teamsters, and any local union, district council, joint district council, conference, or other bargaining agency affiliated with or represented by the Conference, that has entered into a collective bargaining agreement or subscription agreement with a participating employer or employer association, as allowed by the provisions of Article V, Section 1 hereof.

8. "Participation agreement"—a written agreement, in a form approved by the Trustees, by the terms of which a participating employer is obligated to make contributions to the Trust Fund on behalf of the non-bargaining unit employees covered by such an agreement.

9. "Pension benefits" or "employee pension benefits"—the pension and related benefits provided in the Retirement Benefit Plan.

— 3 —

10. "Related trust fund"—an employee benefit trust fund, other than this Trust Fund, to which participating employers make contributions as required by collective bargaining agreements with participating labor organizations.

11. "Retirement Benefit Plan"—The GCIU—Employer Retirement Benefit Plan as constituted on the effective date of this Trust Agreement and as hereafter amended.

12. "Signatory parties"—the parties who have created this Trust Agreement and whose identities and signatures appear on the last page hereof and their successors. (See Note on page 40)

13. "Subscription agreement"—a written agreement, in a form approved by the Trustees, by the terms of which a participating employer and participating labor organization subscribe to the terms and provisions of this Trust Agreement, and by the terms of which an employer is obligated to make contributions to the Trust Fund on behalf of the bargaining unit employees covered by such an agreement.

14. "Trustees" or "Board of Trustees"—the Trustees of the Trust Fund and their successors.

15. "Trust" or "Trust Fund"—the entity created by this Trust Agreement and all property and money held by such entity, including all contract rights and records.

— 4 —

# ARTICLE III
# THE TRUSTEES

1.  *The Board of Trustees*

The Trust Fund and the Retirement Benefit Plan shall be controlled and administered by a Board of Trustees composed of Employer Trustees and Labor Organization Trustees.

2.  *Statutory Capacities of Trustees*

For purposes of complying with Section 302(c)(5)(B) of the Labor Management Relations Act of 1947, the participating employers shall be represented, in the administration of the Trust Fund, by the Employer Trustees; and the participating employees shall be represented by the Labor Organization Trustees.

For purposes of complying with the various provisions of the Employee Retirement Income Security Act of 1974 the Trustees shall be considered as "named fiduciaries", "fiduciaries", the "plan administrator", and the "plan sponsor", as those terms are used in the Act.

3.  *Agents for Service of Process*

The Trustees shall also be considered as agents of the Trust Fund for the purpose of accepting service of legal process, provided that the Trustees may designate their administrative manager, or another person, as agent of the Trust Fund for this purpose.

4.  *Number of Trustees*

There may be up to eighteen (18) Trustees, nine (9) of whom shall be Employer Trustees and nine (9) of whom shall be Labor Organization Trustees.

5.  *Alternate Trustees*

There may also be up to ten (10) alternate Trustees, five (5) of whom shall be alternate Employer Trustees and five (5) of whom shall be alternate Labor Organization Trustees.

In the event any Employer Trustee is absent from any meeting of the Trustees he may designate an alternate Employer Trustee to serve in his place and stead. If the absent Employer Trustee fails to make such a designation, the Employer Trustees who are present at the meeting may designate an alternate Employer Trustee to serve in the place and stead of the absent Trustee.

In the event any Labor Organization Trustee is absent from any meeting he may designate an alternate Labor Organization Trustee to serve in his place and stead. If the absent Labor Organization Trustee fails to make such a designation, the Labor Organization Trustees who are present at the meeting may designate an alternate Labor Organization Trustee to serve in the place and stead of the absent Trustee.

The alternate Trustees, if any, shall be appointed in the same manner and retain such appointment under the same conditions as the regular Trustees. When designated to serve for a regular Trustee, and while serving, an alternate Trustee shall have all of the powers and responsibilities of a regular Trustee.

— 5 —

6.   *Identity of Present Trustees*

The regular and alternate Trustees serving as of the revised date of this Trust Agreement are:

| *Employer Trustees* | *Labor Organization Trustees* |
|---|---|
| Hugh Gaylord | Edward A. Treacy |
| Jim Janiga | Stephen E. Northup |
| Joseph Conley | John D. Bachler |
| Thomas E. Phillips | George Tedeschi |
| Tom Sarnecki | |
| | *Alternate Labor Organization Trustees* |
| | Ralph Meers |

7.   *Appointment of Successor Employer Trustees*

In the event of the termination of appointment, resignation, or death of an Employer Trustee, a successor Employer Trustee shall be appointed by unanimous action of the remaining Employer Trustees.

8.   *Appointment of Successor Labor Organization Trustees*

In the event of the termination of appointment, resignation, or death of a Labor Organization Trustee, a successor Labor Organization Trustee shall be appointed by unanimous action of all of the signatory labor organizations. If any signatory labor organization fails, within sixty (60) days, to respond to a suggested appointment made by the other signatory labor organizations, that signatory labor organization will be deemed to have waived its rights to participate in or to contest the appointment.

9.   *Individuals Disqualified from Service as Trustees*

No individual who has been convicted of any of the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974 shall serve as a Trustee during the period of disqualification specified in the statute.

10.   *Acceptance of Appointment by Trustees*

Each Trustee shall sign a document accepting his appointment as Trustee and agreeing to abide by the terms and provisions of this Trust Agreement.

11.   *Term of Appointment*

Each Trustee shall serve until termination of appointment, resignation, or death.

12.   *Termination of Appointment by Appointing Entity*

The appointment of an Employer Trustee may be terminated, at any time, by unanimous action of the remaining Employer Trustees.

The appointment of a Labor Organization Trustee may be terminated, at any time, by unanimous action of all of the signatory labor organizations.

The termination of a Trustee's appointment shall be effective upon the termination date specified in a written notice of termination, executed by the group of appropriate Employer Trustees or signatory labor organizations. Any such notice shall be addressed to

— 6 —

the Trustees and shall be mailed to the Trust Fund's administrative office.

13.   *Termination of Appointment for Failure to Attend Meetings*

The appointment of a Trustee shall be automatically terminated if such Trustee fails to attend three *(3)* consecutive meetings of the Trustees, without being excused from attendance by specific action of the remaining Trustees noted in the minutes. Alternate Trustees are exempt from this requirement.

14.   *Termination of Appointment for Conviction of a Crime*

The appointment of a Trustee shall be automatically terminated if such Trustee is convicted of any of the crimes listed in Section 411(a) of the Employee Retirement Income Security Act of 1974. If a Trustee who is so disqualified should continue to serve as a Trustee, in circumstances where the remaining Trustees have no knowledge of his disqualification, such service shall not invalidate any of the actions or decisions of the Trustees during the period of such service.

15.   *Termination of Appointment for Mental Incapacity*

The appointment of a Trustee shall be automatically terminated if such Trustee is declared mentally incompetent by court decree.

16.   *Resignation of Appointment*

A Trustee may resign his appointment at any time. Such resignation shall be effective upon the resignation date specified in a written notice of resignation. Any such notice shall be addressed to the Trustees and shall be mailed to the Trust Fund's administrative office.

17.   *Vacancies*

No vacancy in the position of Trustee shall impair the power of the remaining Trustees to administer the affairs of the Trust Fund so long as a quorum exists as specified in Article IV, Section 2 hereof.

18.   *Return of Books and Records*

In the event of the termination of appointment, resignation, or death of a Trustee, the Trustee (or his legal guardian, heirs, or personal representative) shall, upon the request of the Chairman or the Secretary or of the administrative manager, forthwith turn over to the administrative manager, any and all records, books, documents, monies, and other property in the possession of the Trustee, or under his control, that belong to the Trust Fund or that were received by him in his capacity as Trustee.

— 7 —

# ARTICLE IV
# TRUST FUND ADMINISTRATION

1.   *Manner of Voting*

Any action to be taken by the Trustees shall require a favorable vote by the Employer Trustees and by the Labor Organization Trustees, according to the unit method of voting. The Employer Trustees shall have but one vote among them (which shall be determined by a majority of the Employer Trustees present) and the Labor Organization Trustees shall have but one vote among them (which shall be determined by a majority of the Labor Organization Trustees present).

Any Trustee including the Chairman or Secretary may offer or second any motion or resolution for the Trustees' consideration. Any individual Trustee shall be entitled, upon request, to have his vote recorded in the official minutes.

2.   *Constitution of a Quorum*

To constitute a quorum at any meeting of the Trustees there must be present at least three (3) Employer Trustees, or duly designated alternates, and three (3) Labor Organization Trustees, or duly designated alternates.

3.   *Proxies Prohibited*

To encourage full attendance at meetings of the Trustees and due consideration of the matters being voted upon, there shall be no proxies. A Trustee must be present in order to cast a vote.

4.   *Regular Meetings*

The Trustees shall hold regular periodic meetings consistent with the needs of Trust Fund business, provided that there shall be at least two *(2)* regular meetings held during each calendar year. The Trustees shall determine the time and place of all such meetings.

5.   *Special Meetings*

Either the Chairman or the Secretary or any two *(2)* Trustees (one Employer and one Labor Organization Trustee) may call a special meeting of the Trustees by giving written notice to all the other Trustees of the time and place of such meeting, at least thirty (30) days before the date set for the meeting, provided that thirty (30) days advance notice shall not be necessary if all Trustees are agreeable to an earlier meeting.

6.   *Action without a Formal Meeting*

The Trustees may take action without a formal meeting by means of the presentation of a written motion or resolution sent to all Trustees by the administrative manager and the subsequent obtaining of Trustee votes on the motion or resolution in letters, by email, or by facsimile transmission sent by each Trustee to the administrative manager. Any such action shall be reported in the minutes of the next formal meeting.

7.   *Failure of the Trustees to Agree—Arbitration*

In the event the Employer Trustees and Labor Organization Trustees should deadlock on any matter submitted for their consideration, the dispute may be referred by either group of Trustees to an impartial arbitrator in accordance with the labor arbitration rules of the American Arbitration Association. A deadlock shall be deemed to occur when there

— 8 —

is a tie vote on any motion before the Trustees.

The Trustees shall attempt to agree on the joint submission of a statement of the issue in dispute. However, if the Trustees cannot jointly agree upon such a statement, each group of Trustees shall submit to the arbitrator, in writing, its version of the issue in dispute. As part of his award, the arbitrator shall state his determination as to the exact issue.

The decision and award of the arbitrator shall be final and binding upon the Trustees and upon all parties whose interests are affected thereby.

The expenses of any such arbitration, including any court proceedings relating thereto, and the fee of the arbitrator and the reasonable attorney's and witness fees of the parties, shall be chargeable to the Trust Fund.

The procedure specified in this Section shall be the sole and exclusive procedure for the resolution of deadlocked issues.

8.   *Election of Officers*

The Trustees shall elect a Chairman, Vice-Chairman, Secretary and Assistant Secretary. Two of these officers shall be Employer Trustees and two shall be Labor Organization Trustees. When the Chairman is an Employer Trustee, the Vice-Chairman shall also be an Employer Trustee; when the Secretary is a Labor Organization Trustee, the Assistant Secretary shall also be a Labor Organization Trustee, or vice-versa.

The officers shall hold office indefinitely, provided that at the first regular meeting in each odd numbered year, either the Employer Trustees or the Labor Organization Trustees may obtain, on their request, a rotation of all offices and a new election of all officers.

An officer may resign his office at any time. Such resignation shall be effective upon the resignation date specified in a written notice of resignation. Any such notice shall be addressed to the Trustees and shall be mailed, emailed or faxed to the Trust Fund's administrative office. In case of the resignation, death, or termination of appointment of either the Chairman or the Secretary, there shall be a new election of all offices. In case of the resignation, death, or termination of appointment of either the Vice-Chairman or the Assistant Secretary, there shall be a new election of that office only.

9.   *Duties of Officers*

The Chairman shall chair the meetings of the Trustees, shall appoint all committees and shall carry out such other duties as the Trustees may assign to him. The Vice-Chairman, in the absence of the Chairman, shall act in place of the Chairman and perform the Chairman's duties.

The Secretary shall advise the Trustees as to all correspondence and financial reports pertaining to the Trust Fund and shall keep minutes or records of all meetings, proceedings, and actions of the Trustees, provided that these particular responsibilities may be delegated to the administrative manager or to other professional persons retained by the Trustees. The Assistant Secretary, in the absence of the Secretary, shall act in place of the Secretary and perform the Secretary's duties.

10.   *Authorized Signatures*

The Chairman or the Vice-Chairman, and the Secretary or the Assistant Secretary, shall sign all negotiable instruments, certificates, contracts, government reports, and other

— 9 —

legal documents on behalf of the Trust Fund, provided that the authority for signing nego-
tiable instruments may be delegated to the administrative manager, corporate trustee (if
any), depository bank, or custodian bank. All persons doing business with the Trust Fund
may rely on such signatures.

If the Trust Fund issues benefit checks to participating employees or their beneficia-
ries, the signatures of the Chairman and Secretary may be affixed thereto by a facsimile
signature device, under safeguards determined by the Trustees.

11.   *Compensation and Expenses*

No Trustee shall receive any compensation from the Trust Fund for services as a
Trustee.

Each Trustee (and each alternate Trustee who is called upon to substitute for an
absent Trustee) shall be reimbursed out of the Trust Fund for all expenses properly and
actually incurred by him in the administration of the Trust Fund. The Trustees shall estab-
lish the conditions for the reimbursement of expenses.

12.   *Benefits* to *Trustees Not Prohibited*

Nothing in this Trust Agreement shall prohibit a Trustee from receiving any benefits
under the terms of the Retirement Benefit Plan, if he is otherwise eligible for the same as
a participating employee or as a beneficiary of a participating employee.

— 10 —

# ARTICLE V
# PARTICIPATION

1.  *Bargaining Unit Employees Entitled to Participate*

Employees in bargaining units covered by collective bargaining agreements between employers and employer associations in the printing and paper products industry and the Graphic Communications Conference of the International Brotherhood of Teamsters, or any local union, district council, joint district council, conference or other bargaining agency affiliated with, merged with, or represented by the Conference, shall be entitled to participate in this Trust Fund.

The Trustees, however, shall have the authority to decline or terminate the participation of a particular bargaining unit if (a) the bargaining parties fail to provide the Trustees with a copy of their collective bargaining agreement or if the language of the contribution provision in such agreement does not meet the requirements of the Trustees, provided that the Trustees, in their discretion, may accept a subscription agreement in lieu of, or to supplement, a collective bargaining agreement; (b) the negotiated contribution rate is lesser, or greater, than the contribution rate or rates allowable under the terms of the Retirement Benefit Plan, provided that the Trustees, in their discretion, may accept the different rate and establish different eligibility rules or benefit formulas for the bargaining unit employees affected; (c) to allow participation as requested would violate any established rule, policy, or procedure  governing participation in the Trust Fund; or (d) there exist other facts and circumstances which, in the Trustees' discretion, justify a declination or termination of participation.

2.  *Labor Organization Employees*

Employees of a participating labor organization may participate in the Trust Fund, provided that the labor organization executes a participation agreement by the terms of which it agrees to make contributions to the Trust Fund on behalf of such employees.

The rate at which the labor organization makes contributions to the Trust Fund shall not exceed the highest negotiated rate in the geographical area encompassed by that labor organization.

3.  *Non-Bargaining Unit Employees of Participating Employers*

Non-bargaining unit employees of a participating employer may participate in the Trust Fund, provided that the employer executes a participation agreement by the terms of which it agrees to make contributions to the Trust Fund on behalf of such employees. The contribution rate for nonbargaining unit employees shall be a monthly rate equivalent to that which the participating employer is required to pay for its bargaining unit employees. Contributions must be paid on all employees falling within an appropriate group as follows:

Group A—Office clerical employees. All office clerical employees at a particular establishment must be considered as a group and the employer must make contributions for all office clerical employees within such group.

Group B—Managerial employees/business agents/officers. All managerial employees, business agents and officers at a particular establishment must be considered as a

— 11 —

group and the employer must make contributions for all employees within such group. Further, no contributions shall be accepted for a managerial employee, business agent or officer group unless the employer also contributes for the remaining employees at that establishment.

Group C—Foremen and superintendents of printing department. All non-contract foremen and superintendents of the printing department at a particular establishment must be considered as a group and the employer must make contributions for all foremen and superintendents in such group.

Group D—Other non-bargaining groups. The Trustees may recognize and allow other groups of non-bargaining unit employees to participate, as they may determine.

4.   *Transferred Employees*

Individual participating employees who may be transferred from a bargaining unit position to a non-bargaining unit position at a particular establishment may continue to participate in the Trust Fund, provided that the participating employer makes contributions for all such employees. The contribution rate for transferred employees shall be a monthly rate equivalent to that which the participating employer is required to pay for its bargaining unit employees.

5.   *Trust Fund Employees*

Employees of the Trust Fund (if any), or of a related trust fund may participate in the Trust Fund, provided that the Trustees authorize such participation. The cost of such participation shall be chargeable to the Trust Fund or to the related trust fund.

6.   *Unauthorized Participation*

The only individuals who are eligible to participate in and receive benefits from the Trust Fund shall be those employees in the bargaining units and other groups described in Sections 1, 2, 3, 4, and 5 above. It is expected that participating employers will submit contributions only on behalf of such employees. The receipt by the Trust Fund of contributions which may be submitted on behalf of individuals who are not eligible to participate shall not stop the Trustees from declining or terminating the participation of such individuals nor shall it constitute a waiver of any of the provisions of this Article or of the Retirement Benefit Plan.

7.   *Sole Proprietors and Partners Ineligible*

Sole proprietors and partners are not to be considered as participating employees and shall not be eligible to participate in and receive benefits from the Trust Fund.

8.   *Participation of Non-Bargaining Unit Employees*

It is intended that the participation of groups described in Sections 2, 3, 4 and 5 above (and the resulting coverage under and benefits from this Retirement Benefit Plan) will be in accordance with the non-discrimination laws contained in the Tax Reform Act of 1986 and the Technical and Miscellaneous Revenue Act of 1988 and any amendments or regulations issued subsequent thereto, to the extent such laws and regulations are applicable to this Trust Fund and the Retirement Benefit Plan. Any omissions or oversights will be resolved in accordance with the applicable laws and regulations.

— 12 —

# ARTICLE VI
## TRUSTEE RESPONSIBILITIES

1. *General Duty—Receipt of Contributions and Administration of Retirement Benefit Plan*

It shall be the general duty of the Trustees to receive the employer contributions and any other income or assets which they may obtain and, with such, to administer the Retirement Benefit Plan.

Additionally, the Trustees shall have the specific duties set forth in this Article and such other duties as are imposed upon them by Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, and other applicable laws.

2. *Compliance with the Internal Revenue Code*

The Trustees shall administer the Trust Fund and the Retirement Benefit Plan so that, to the extent allowed in the Internal Revenue Code, employer contributions are tax deductible and the Trust Fund is tax-exempt.

3. *Funding Standards*

The Trustees, with the assistance of their enrolled actuary, shall establish and maintain a funding standard account, as required by Section 304(b)(l) of the Employee Retirement Income Security Act of 1974, for the purpose of determining that the Retirement Benefit Plan remains actuarially sound according to the funding standards imposed by such Act. The funding standard account shall be reviewed by the Trustees at least once each year and on occasions when the Trustees are considering amendments to the Retirement Benefit Plan which involve an actuarial cost.

The Trustees shall administer the Trust Fund and the Retirement Benefit Plan so that, to the extent such is reasonably within their control, the Plan does not accrue an uncorrected "accumulated funding deficiency", as defined in Section 304(a) of the Employee Retirement Income Security Act of 1974. If it should be determined that an "accumulated funding deficiency" has accrued or will accrue, such deficiency may be corrected by the participating employers and labor organizations, through an adjustment in the amount of contributions, or by the Trustees, through an amendment of the Retirement Benefit Plan adjusting the level of benefits.

The foregoing provision shall not be interpreted as a guarantee that the Retirement Benefit Plan will never accrue an uncorrected "accumulated funding deficiency" or as an indemnification on the part of the Trustees as to any liability which may be imposed upon a participating employer with respect to such deficiency under the applicable provisions of such Act or the Internal Revenue Code.

4. *Basis of Payments to and from Trust Fund*

The basis on which the employer contributions are made to the Trust Fund shall be as specified in the underlying collective bargaining agreement, subscription agreement or participation agreement. The basis on which benefits are paid out of the Trust Fund shall be as specified in the Retirement Benefit Plan.

— 13 —

5.   *Application of Trust Fund Assets*

*As* required by Section 403(c)(l) of the Employee Retirement Income Security Act of 1974, the assets of the Trust Fund shall never inure to the benefit of any participating employer and shall be held for the exclusive purposes of providing benefits to participating employees and their beneficiaries and defraying reasonable administrative expenses.

6.   *Fiduciary Standards*

As required by Section 404(a)(l)(A) and (B) of the Employee Retirement Income Security Act of 1974, the Trustees shall discharge their duties and administer the Trust Fund assets solely in the interest of the participating employees and their beneficiaries and for the exclusive purpose of (a) providing benefits to participating employees and their beneficiaries and (b) defraying reasonable expenses of benefit plan administration.

In carrying out their duties the Trustees shall act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

7.   *Deposits*

The Trustees shall deposit the contributions or any other monies which they may receive, in one or more banks or similar financial institutions supervised by the United States or a state, pending the allocation of such monies for the payment of current benefits and expenses, or for investment.

8.   *Investments*

The Trustees shall invest all contributions or other monies not required for the payment of current benefits and expenses. The Trustees may invest and reinvest in bank accounts, savings and loan accounts, securities, mortgages, deeds of trust, notes, commercial paper, real estate, insurance contracts, and in such other property, real, personal, or mixed, as they deem prudent provided that in the making of investments the Trustees shall diversify such investments as required by Section 404(a)(l)(C) of the Employee Retirement Income Security Act of 1974 so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so. Further, no investment shall be made which would constitute a "prohibited transaction" within the meaning of Section 406 of such Act, provided that the Trustees shall have the authority to apply to the Secretary of Labor for a conditional or unconditional exemption from any of the "prohibited transaction" rules, as they may deem necessary.

9.   *Specifically Permitted Investments*

In the event the Trustees designate one or more banks or similar financial institutions supervised by the United States or a state to serve as custodian of the trust assets, or as a corporate co-trustee, or in another fiduciary capacity, the monies belonging to the Trust Fund may be invested in the accounts of such bank or institution, provided that such accounts bear a reasonable interest rate.

Further, to the extent allowed by law, the monies of the Trust Fund may be invested in (a) a common or collective trust fund or pooled investment fund maintained by a bank or trust company supervised by the United States or a state or (b) in a pooled investment fund of an insurance company, or (c) in a group trust sponsored by a qualified investment

— 14 —

manager as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, even though such bank, trust company, insurance company, or investment manager is a party-in-interest as that term is designated in Section 3(14) of the Employee Retirement Income Security Act of 1974, provided that the bank, trust company, insurance company, or investment manager receives not more than reasonable compensation for managing such an investment.

Finally, to the extent permitted by law, the monies of the Trust Fund may also be invested in certain alternative investments, including, but not limited to, REITS, private equity funds, infrastructure funds, and instruments comprising risk parity and real return strategies, subject to the investment criteria set out in Section 8 above.

10. *Title to Investments and Other Assets*

Title and voting rights to all investments or other assets of the Trust Fund shall be maintained in the name of the Trust Fund provided that for convenience in transferring securities, title and voting rights to such securities may be held in the name of the Trust Fund's custodian bank, or of its nominee.

Except as may be authorized by regulation of the Secretary of Labor the indicia of ownership of all investments and other assets of the Trust Fund shall not be maintained outside the jurisdiction of the district courts of the United States.

11. *Fidelity Bond*

The Trustees shall procure a fidelity bond in the amount required by Section 412 of the Employee Retirement Income Security Act of 1974 covering the Trustees, the administrative manager, and all other persons who receive, handle, disburse, or otherwise exercise custody or control of any of the funds or other property of the Trust Fund. The cost of such bond shall be chargeable to the Trust Fund.

12. *Records*

The Trustees shall maintain records of their administration of the Trust Fund and the Retirement Benefit Plan, including records of all receipts and disbursements, all investments purchased or sold, all participating employee listings, all minutes of Trustee meetings, and all correspondence. No such record shall be destroyed except upon the specific action of the Trustees and destruction shall not be directed until a period of eight (8) years has elapsed from the date the record was created, unless some additional period is required by law.

13. *Annual Audit*

The Trustees shall engage, on behalf of the participating employees and their beneficiaries, an independent qualified public accountant as that term is defined in Section 103(a)(3)(D) of the Employee Retirement Income Security Act of 1974 and shall authorize such accountant to conduct an annual financial examination of the Trust Fund, as required by Section 103(a)(3)(A) of such Act, and such other examinations as the Trustees may deem necessary. The cost of such examinations shall be chargeable to the Trust Fund.

A statement of the results of each annual examination shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

— 15 —

14.   *Annual Actuarial Statement*

The Trustees shall engage, on behalf of the participating employees and their beneficiaries, an enrolled actuary, as that term is defined in Section 103(a)(4)(C) of the Employee Retirement Income Security Act of 1974, and shall authorize such actuary to prepare an annual actuarial statement as to the Retirement Benefit Plan, as required by Section 103(d) of such Act. The cost of such statement shall be chargeable to the Trust Fund.

The annual actuarial statement shall be submitted to the Trustees for their review and, further, shall be made part of the Trust Fund's annual report.

The enrolled actuary shall also be authorized to conduct an annual actuarial valuation as required under Section 304(c)(7) of such Act.

15.   *Summary Plan Description*

The Trustees shall furnish to the Department of Labor, upon request, any documents related to the employee benefit plan, including but not limited to the latest summary plan description, and any modifications or changes in the information contained in such description, as required by Section 104(a)(6) of the Employee Retirement Income Security Act of 1974.

The Trustees shall also furnish to participating employees and to each beneficiary receiving benefits copies of the summary plan description and copies of any modifications or changes in the information in such description, as required by Section 104(b)(l) of such Act.

16.   *Annual Report*

The Trustees  shall prepare and file with the Department of Labor an annual report as required by Sections 104 and 4065 of the Employee Retirement Income Security Act of 1974 as amended. The Trustees shall also furnish a report to participating employers and the participating labor organizations within 30 days after the due date for filing of the annual report that contains the summary plan information set forth under Section 104 (d) of such Act.  In no case shall a participating  employer or  participating  labor organization be entitled to receive more than one copy of any such document described in Section 104(d) of the Act during any one 12-month period. The Trustees may impose a reasonable charge to cover copying, mailing, and other costs of furnishing copies of the required information.

17.   *Statements of Accrued Pension Benefits*

As required by Section 105(a)(1)(B) of the Employee Retirement Income Security Act of 1974, the Trustees shall furnish a pension benefit statement at least every 3 years to each participating employee with a nonforfeitable accrued benefit and who is employed by a participating employer at the time the statement is to be furnished, and to a participating employee or beneficiary upon written request. The pension benefit statement shall indicate, on the basis of the latest information available, (a) the total benefits accrued and (b) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable. Such statements may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participating employee or beneficiary. Alternatively, the Trustees may comply with the requirements of Section 105 (a) (1) (B) of such Act by providing at least once a year to participating

— 16 —

employees notice of the availability of the pension benefit statement and the ways in which the participating employee may obtain such statement. Such notice may be delivered in written, electronic, or other appropriate form to the extent such form is reasonably accessible to the participating employee. In no case shall a participating employee or beneficiary be entitled to more than one pension benefit statement in any 12-month period.

In addition, the Trustees shall furnish to each participating employee who during the Plan Year separates from service covered by the Benefit Plan, who is entitled to a deferred vested benefit under the Benefit Plan as of the end of such Plan Year, and with respect to whom retirement benefits were not paid under the Benefit Plan during such Plan Year, a statement describing the nature, amount and form of the deferred vested benefit to which such participating employee is entitled. Such statement shall also include a notice to the participating employee of any benefits which are forfeitable if the participant dies before a certain date. The Trustees shall also file an annual registration statement with the Internal Revenue Service concerning participating employees to whom such statements have been issued, as required by Section 6057 of the Internal Revenue Code.

18. *Pension Funding Notice*

The Trustees shall provide an annual pension funding notice to the Pension Benefit Guaranty Corporation, to each participating employee and beneficiary, to the participating labor organization, and to each participating employer. The notice shall contain the specific information required for multiemployer plans as set forth under Section 101(f)(2) of the Employee Retirement Income Security Act of 1974 and shall be provided to the applicable parties not later than 120 days after the end of the Plan Year to which the notice relates. Such notice may be provided in written, electronic, or other appropriate form to the extent such form is reasonably accessible to persons to whom the notice is required to be provided.

19. *Income Tax Withholding and Reporting*

The Trustees (or their duly appointed custodian bank) shall annually provide each retired employee or beneficiary receiving benefits with notice of the right to elect against withholding of income tax from his pension benefits and the right to revoke such election as required by Section 3405 of the Internal Revenue Code.

The Trustees shall also furnish to each retired employee or beneficiary receiving benefits an annual statement of the benefits paid to him, as required by Section 6051 (a) of such Code.

20. *Documents to be Examined or Furnished*

The Trustees shall make copies of (a) this Trust Agreement, (b) the latest summary plan description, (c) the latest annual report, (d) the applicable collective bargaining agreement, and (e) any other contracts or instruments under which the employee pension benefit plan is established or operated available for examination by participating employees or their beneficiaries in the Trust Fund office as required by Section 104(b)(2) of the Employee Retirement Income Security Act of 1974.

The Trustees shall upon written request by any participating employee or beneficiary, furnish to the participating employee or beneficiary a copy of (a) this Trust Agreement, (b) the latest updated summary plan description, (c) the latest annual report, (d) any terminal report, (e) the applicable collective bargaining agreement, and (f) any other contracts or instruments under which the employee pension benefit plan is established or operated,

— 17 —

as required by Section 104(b)(4) of such Act. Such copies shall be furnished within thirty (30) days of the request. The Trustees may impose a reasonable charge for such copies as may be allowed by regulation of the Secretary of Labor.

The Trustees shall also, upon written request by a participating employee or beneficiary, furnish to the participating employee or beneficiary a copy of a) any periodic actuarial report (including any sensitivity testing received by the Trust Fund for any Plan Year which has been in the Trust Fund's possession for at least 30 days, b) a copy of any quarterly, semi-annual or other financial report prepared for the Trust Fund by any Fund Investment Manager or advisor or other fiduciary which has been in the Trust Fund's possession for at least 30 days, and c) any application filed with the Secretary of the Treasury requesting an extension under Section 304 of the Act or Section 431 (d) of the Internal Revenue Code of 1986, as required by Section 101(k) of the Act subject to limitations imposed by Section 101(k) with regard to individually identifiable information and proprietary information. Such copies shall be furnished within 30 days of the request but only one copy of any report or application may be received during one 12 month period. The Trustees may impose a reasonable charge to cover copying, mailing and other costs of furnishing copies of the information as may be allowed by regulations of the Secretary of Labor. This provision also applies to the participating employers and labor organizations.

21. *Procedure for Establishing Funding Policy*

As required by Section 402(b)(l) of the Employee Retirement Income Security Act of 1974, the Trustees shall meet periodically with the administrative manager, enrolled actuary, independent qualified public accountant, investment manager or managers (if any), and such other Trust Fund advisers as may be appropriate for the purpose of anticipating the short and long run financial needs of the Trust Fund and of establishing an appropriate funding policy and method for the Trust Fund.

The funding policy and method shall be considered by the Trustees, or by their investment manager or managers (if any), in the management of trust fund investments.

22. *Payments to Pension Benefit Guaranty Corporation*

The Trustees shall pay to the Pension Benefit Guaranty Corporation the plan termination insurance premiums fixed by the Corporation, as required by Section 4002(a) of the Employee Retirement Income Security Act of 1974. Such premiums shall be chargeable to the Trust Fund. Consistent with regulations issued by the Corporation, the Trustees shall have the authority to adopt a definition of a plan "participant" and to compute and pay premiums on the basis of that "definition".

23. *Benefit Claim and Review Procedures*

The Trustees shall establish administrative procedures whereby a participating employee or beneficiary who makes a claim for benefits and that claim is denied, is notified, in writing, of the reasons for such denial including specific references to the Retirement Benefit Plan provisions upon which the denial is based, a description of any additional information which is necessary to perfect the claim and why the information is necessary, and which afford such a participating employee or beneficiary a reasonable opportunity for a full and fair review, as required by Section 503 of the Employee Retirement Income Security Act of 1974. Such procedures shall include the Benefit Claim

— 18 —

and Review Procedures for a participating employee or beneficiary as set out in Article XIII, Section 5 of the Retirement Benefit Plan

# ARTICLE VII
## ALLOCATION OR DELEGATION OF TRUSTEE RESPONSIBILITIES

1.   *Allocation of Responsibilities to Committees*

The Trustees may allocate to one or more committees of Trustees all or part of the following responsibilities, with full power to act: (a) the responsibility for managing the Trust Fund investments (if not otherwise delegated to a qualified investment manager); (b) the responsibility for reviewing and determining benefit claims of participating employees and their beneficiaries; (c) the responsibility for conducting hearings and issuing determinations as provided for in Article XI, Section 3 hereof; (d) the responsibility for resolving questions or problems that may be encountered in connection with payroll auditing or employer withdrawal liability activities; (e) the responsibility for resolving questions or problems that may be encountered in connection with the collection of delinquent employer accounts; (f) the responsibility for resolving questions or problems that may be encountered in connection with the day-to-day work of the administrative manager; (g) the responsibility for reviewing the performance of the qualified investment managers (if any), and of the other persons retained by the Trustees.

In the event the Trustees elect to allocate any of the stated responsibilities they shall do so by the adoption of a motion or resolution calling for the appointment of a committee of Trustees (consisting of equal numbers of Employer Trustees and Labor Organization Trustees) and specifying the particular responsibility that is being allocated. With respect to the responsibility that is allocated, the committee shall have the powers of the full Board of Trustees. Any action to be taken by the committee shall be determined according to the voting formula contained in Article IV, Section 1 hereof. If the committee members deadlock on any matter submitted for their consideration such matter shall be referred to the full Board of Trustees for review and action.

Nothing contained herein shall in any way limit the authority of the Trustees to create additional committees for the purpose of assisting with or expediting the affairs of the Trust Fund, provided that any such committee shall be empowered only to make recommendations with respect to the matters referred to it.

2.   *Delegation of Investment Responsibilities*

The Trustees may delegate all or part of their responsibilities for the management of the Trust Fund investments to one or more qualified investment managers, as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, i.e., (a) an investment adviser registered as such under the Investment Advisers Act of 1940, (b) a bank as defined in that Act, or (c) an insurance company qualified to manage, acquire, or dispose of employee benefit plan assets under the laws of more than one state.

In the event the Trustees elect to delegate investment responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated investment manager(s). The delegation shall be effective when the investment manager(s) accepts the delegation and acknowledges in writing his status as a fiduciary with respect to the Trust Fund.

— 19 —

3.   *Delegation of Other Responsibilities*

The Trustees may delegate all or part of their responsibilities with respect to the administration of the Trust Fund or the Retirement Benefit Plan (except investment responsibilities) to their administrative manager or to any other person whom they may designate for such purpose.

In the event the Trustees elect to delegate a particular responsibility they shall do so by the adoption of a motion or resolution making the delegation to a designated person. The delegation shall be effective when the designated person accepts the delegation. If the delegation involves a responsibility other than one which is ministerial in nature, the designated person shall also acknowledge in writing his status as a fiduciary with respect to the Trust Fund.

4.   *Review of Performance*

In the event the Trustees elect to allocate or delegate Trustee responsibilities they shall periodically review the performance of the persons to whom such responsibilities have been allocated or delegated.

— 20 —

# ARTICLE VIII
# TRUSTEE POWERS

1.   *General Powers*

Except as may be expressly limited by the terms of this Trust Agreement, the Trustees shall have full and exclusive authority to control and administer the Trust Fund and the Retirement Benefit Plan.

The authority of the Trustees encompasses not only the specific powers recited in the various paragraphs of this Trust Agreement but also includes the general power to do all things and take all actions, including the expenditure of Trust Fund monies, which they may deem necessary to carry out the purpose of this Trust Agreement. The Trustees may implement their powers through the adoption of appropriate motions, resolutions, or administrative rules and regulations. Unless otherwise stated in this Trust Agreement, the Trustees will serve as fiduciaries in the creation, the administration and design of the Benefit Plan hereunder and in the implementation of any action resulting from these functions or in the exercise of any other general or specific power set out in this Trust Agreement.

2.   *Specific Powers Discretionary*

The recitation of specific powers in this Trust Agreement shall not be interpreted as compelling the exercise of any such power. The exercise of specific powers is discretionary with the Trustees.

3.   *Benefit Plan Being Administered*

The employee pension benefit plan being administered through this Trust Fund as of the effective date of this Trust Agreement is described as the

**GCIU—Employer**
**Retirement Benefit Plan**

4.   *Amendments to the Benefit Plan*

The Trustees shall have the authority to amend the Retirement Benefit Plan, in whole or in part, as they may determine. Such amendments may involve the rules under which participating employees and beneficiaries become eligible for pension benefits, the nature of the pension benefits to be provided, including any related benefits, and the amount and duration of such benefits.

No amendment shall be made if the same is prohibited by the provisions of the Employee Retirement Income Security Act of 1974 or the Internal Revenue Code and, if the subject matter is governed by the Act, or the Code, the amendment shall conform to the requirements of the Act or the Code.

5.   *Means of Providing Benefits*

The Trustees may provide the benefits specified in the Retirement Benefit Plan, in whole or in part, directly from the Trust Fund or may contract with an insurance carrier or other legally authorized entity, to underwrite or provide such benefits.

— 21 —

6.  *Facility of Payment*

The Trustees shall have the authority to adopt rules by the terms of which benefit payments owing to minors or incompetents may be paid instead to a person or institution providing care or other services to such minor or incompetent, even though a legal guardian ship does not exist. Benefit payments made under any such rules shall fully discharge the Trust Fund's obligation to the minor or incompetent.

7.  *Administrative Manager*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, an administrative manager to assist the Trustees in the administration of the Trust Fund and the Retirement Benefit Plan. Such administrative manager may be retained on a contract or salaried basis, as the Trustees may determine.

In the event the Trustees employ a salaried administrative manager they shall also have the authority to employ such additional administrative staff personnel as may be necessary.

The Trustees shall periodically review the performance of the administrative manager.

8.  *Banking Services*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, one or more banks or similar financial institutions supervised by the United States or a state, to perform depository or custodial services, or to serve as corporate trustee or co-trustee, on behalf of the Trust Fund.

The Trustees shall periodically review the performance of the banks which they have retained to provide banking services.

9.  *Other Professional and Non-Professional Persons*

The Trustees shall have the authority to retain, at the expense of the Trust Fund, actuaries, attorneys, employee benefit plan consultants, investment managers, investment performance analysts, payroll auditors, collection agents, and other professional or non-professional persons, as they may deem necessary. Unless limited by the provisions of the Employee Retirement Income Security Act of 1974, the retention of any such professional or non-professional help may be on a contract or salaried basis, as the Trustees may determine.

The Trustees shall periodically review the performance of the professional or nonprofessional persons they have retained.

10.  *Obtaining of Necessary Premises, Equipment, and Supplies*

The Trustees shall have the authority to purchase or lease suitable premises and equipment and to purchase materials and supplies, at the expense of the Trust Fund, as they may deem necessary.

11.  *Insurance*

The Trustees shall have the authority to purchase policies of insurance (liability, property damage, casualty, and errors and omissions) to protect the Trust Fund and to protect themselves, their administrative manager, and their employees (if any), with respect

— 22 —

to their activities on behalf of the Trust Fund, as they may deem necessary. The costs of such insurance policies shall be chargeable to the Trust Fund.

Any policy of errors and omissions insurance shall contain a recourse clause as required by Section 410(b)(l) of the Employee Retirement Income Security Act of 1974, provided that nothing herein shall prevent a Trustee (or an employer, employer association, or labor organization acting on his behalf) or the administrative manager, or the Trust Fund employees (if any) from purchasing for themselves a waiver of the recourse clause or a separate policy insuring against such recourse.

12.  *Borrowing Money*

The Trustees shall have the authority to borrow money for the Trust Fund, with or without security, as they may deem necessary.

13.  *Reserve Funds*

The Trustees shall have the authority to maintain reasonable reserve funds, for future contingencies, as they may deem necessary.

14.  *Payment of Taxes*

The Trustees shall have the authority to pay, at the expense of the Trust Fund, all real and personal taxes, and other taxes and assessments of any kind, which may be lawfully levied or assessed against the Trust Fund.

15.  *Refunds of Contributions Erroneously Paid*

The Trustees shall have the authority to adopt rules by the terms of which refunds of contributions may be made to a participating employer where the employer has paid such contributions in error, as may be allowed by Section 403(c) of the Employee Retirement Income Security Act of 1974.

16.  *Penalties for False or Withheld Information*

The Trustees shall have the authority to adopt rules and regulations by the terms of which reasonable penalties or forfeitures may be imposed upon participating employees or beneficiaries who (a) falsify any information requested of them in the administration of the Trust Fund and the Retirement Benefit Plan, or (b) fail to provide requested information within a reasonable time.

17.  *Correction of Errors*

It is recognized and acknowledged by all parties that the Trustees will provide eligibility credits and benefits to participating employees and their beneficiaries based on Trust Fund records. It is also recognized and acknowledged that such records could be incorrect due to (a) employers reporting individuals who are not eligible for participation, (b) employers reporting incorrect names or incorrect social security numbers, (c) employers reporting more or less than the hours or contributions required to be reported, (d) delinquent employer reports, (e) employees or beneficiaries submitting incorrect or false benefit applications, (f) recording or computation errors by the administrative manager, (g) computer errors, or (h) other similar circumstances. The Trustees shall have the authority to correct the Trust Fund records whenever errors are discovered and to terminate participation, adjust eligibility credits or benefits, or seek the recovery of benefit overpayments,

— 23 —

as they may determine.

18.  *Prosecution of Legal Action or Claims*

The Trustees shall have the authority to originate and maintain any legal actions, or claims involving potential legal actions, at the expense of the Trust Fund, as they may deem necessary. All such actions and claims shall be prosecuted in the name of the Trust Fund or in the name of an assignee.

19.  *Defense of Legal Actions or Claims*

The Trustees shall have the authority to defend all legal actions, claims involving potential legal actions, and investigatory proceedings, initiated against the Trust Fund or against one or more of the Trustees, or former Trustees, or the administrative manager, or against one or more of the employees of the Trust Fund (if any) which relate to the administration of the Trust Fund or the Retirement Benefit Plan. Except as stated below, the defense of such actions, claims and proceedings shall be at the expense of the Trust Fund.

If the final court decree establishes personal liability on the part of specified Trustees, or the administrative manager, or the employees of the Trust Fund (if any) for breach of their fiduciary responsibilities, as permitted by Section 409(a) of the Employee Retirement Income Security Act of 1974, and orders that the specified persons are to bear the expenses of their own defense, the attorney fees and costs of the specified persons shall not be chargeable to the Trust Fund. If attorney fees and costs have already been charged to the Trust Fund, the specified persons shall be obligated to repay the Trust Fund for their pro rata share of such fees and costs.

20.  *Compromise of Legal Actions or Claims*

The Trustees shall have the authority to compromise, settle, or release all legal actions, or claims involving potential legal actions, in favor of or against the Trust Fund on such terms and conditions as they may determine.

21.  *Subscription and Participation Agreements*

The Trustees shall have the authority to create and distribute subscription and participation agreements, at the expense of the Trust Fund, and to insist upon the execution and filing of such agreements as a condition precedent to the acceptance of contributions.

22.  *Participation in Non-Profit Educational Organizations*

The Trustees shall have the authority to participate in non-profit foundations, corporations, councils, committees, or other organizations which sponsor educational programs or provide educational materials pertaining to the administration of trust funds of this nature and of employee benefit plans. If the Trustees act to participate in any such non-profit organization, the membership or participation fees of the organization shall be chargeable to the Trust Fund.

The Trustees shall also have the authority to purchase educational materials and to provide for the attendance of the Trustees, or of their administrative manager, or of such of their employees (if any), as they may designate, at educational conferences and meetings. The costs of such materials and attendance shall be chargeable to the Trust Fund.

23.  *Reciprocity*

The Trustees shall have the authority to enter into reciprocal agreements with other

— 24 —

employee pension benefit funds for the exchange of eligibility credits or monies, or for the payment of pro rata benefits, on behalf of employees who may terminate their participation in the Trust Fund and begin participation in a reciprocal trust fund, and vice-versa.

24.  *Mergers*

The Trustees may accept mergers of other employee pension benefit trust funds, maintained by participating employers or jointly by participating employers and participating labor organizations, into this Trust Fund so that individual participants in such other trust funds can become participants in this Trust Fund. To that end, the Trustees shall have the authority to negotiate and consummate appropriate merger agreements which provide for the transfer of assets and liabilities from other employee pension benefit trust funds to this Trust Fund.

Any such merger agreement shall conform to these standards: (a) the value of the retirement benefits assumed by this Trust Fund (as determined on the basis of actuarial standards approved by the Trustees) with respect to the participants of the other trust fund who had retired prior to the date of the merger agreement shall not exceed the market value (determined on the date of transfer) of the assets transferred to this Trust Fund on behalf of such retired participants and (b) the value of the aggregate current service credited to the participants in the other trust fund who had not retired as of the date of the merger agreement shall not exceed one year of current service for each $1,300 (or other amount which may be fixed by the Trustees) of market value (determined on the date of transfer) of the remaining assets transferred to this Trust Fund on behalf of such participants, after allocation for retired participants.

Any such merger agreement shall also include such requirements as may be applicable under Section 208 of the Employee Retirement Income Security Act of 1974 and under the applicable provisions of the Internal Revenue Code.

25.  *Eligible Rollover Plan Distributions*

The Trustees shall have the authority to administer direct trustee-to-trustee transfers of eligible rollover plan distributions to financial institutions selected by the participant (or spouse or former spouse). The Trustees shall also have the authority to implement any necessary procedures and policies which are required by the Unemployment Compensation Amendment Act of 1992 and any amendments or regulations issued relating thereto in order to comply with the Act and regulations.

26.  *Interpretation and Application of Documents*

The Trustees shall have the authority to interpret and apply the provisions of this Trust Agreement, or of the Retirement Benefit Plan, or of their own motions, resolutions, and administrative rules and regulations, or of any contracts, instruments, or writings which they may have adopted or entered into.

27.  Adoption and Implementation of a Funding Improvement Plan and Rehabilitation Plan

The Trustees shall have the authority to adopt and implement a funding improvement plan and a rehabilitation plan in accordance with the provisions of ERISA Section 305, should the enrolled actuary certify that the Retirement Benefit Plan is in endangered or critical status. In this regard, the Trustees shall provide the participating employers and

participating labor organizations with a schedule or schedules showing revised benefit and/or contribution structures which, if adopted, might reasonably be expected to allow the Retirement Benefit Plan to achieve applicable funding benchmarks (if the Retirement Benefit Plan is in endangered status) or to allow the Retirement Benefit Plan to emerge from critical status or to stave off insolvency.

    If upon expiration of a collective bargaining agreement in effect at the time the Retirement Benefit Plan entered endangered or critical status, a participating employer and the participating labor organization are unable to agree on a new contract that includes benefit and/or contribution schedules necessary to allow the Retirement Benefit Plan to meet the applicable benchmarks, if the Retirement Benefit Plan is in endangered status, or to allow the Retirement Benefit Plan to emerge from critical status, or to stave off insolvency, the Trustees shall have the authority to implement the default schedule as described under ERISA Section 305(c)(1) (B)(i) (I) and Section 305 (e)(1)(B)(ii).

Nothing in this section should be construed as to limit the Trustees' authority and powers under the Trust Agreement or applicable provisions of ERISA.

GCIU-Employer Retirement     EXHIBIT 1 to COMPLAINT - 41
Fund, et. al. v. Service Press, Inc.

## ARTICLE IX
## CONTRIBUTIONS AND COLLECTIONS

1. *Contribution Reporting Forms*

The Trustees shall create and make available, at the expense of the Trust Fund, contribution reporting forms for the use of participating employers in making their contributions.

2. *Contributions Due*

Contributions shall be made on all hours worked or paid for, as required by the terms of the collective bargaining agreement. Hours worked include overtime hours. Hours paid for generally include vacation, sick, holiday, and probationary hours, whether specifically included in the collective bargaining agreement, or not.

3. *Contribution Due Date*

All contributions shall be due by the fifteenth (15) day of the month following the month in which they accrue.

4. *Delinquent Contributions*

A participating employer shall be considered to be delinquent in the payment of contributions if he (a) fails to submit a contribution reporting form, and the contributions detailed therein, by the close of business on the due date, or (b) fails to submit contributions on behalf of all the employees for whom contributions are required under the applicable collective bargaining agreement, subscription agreement, or participation agreement, or (c) fails to properly compute the contributions according to the required contribution formula specified in the applicable collective bargaining agreement, subscription agreement, or participation agreement.

The Trustees shall undertake reasonable efforts to collect known delinquent contributions and related claims.

5. *Audit of Employer Books and Records*

The Trustees shall have the authority to audit the payroll books and records of a participating employer, either directly or through a qualified public accountant, as they may deem necessary in the administration of the Trust Fund. Such payroll audit may be undertaken pursuant to a routine payroll audit program or on a case by case basis, as the Trustees may determine.

Whenever a payroll audit is authorized, the participating employer involved shall make available to the Trustees, or the qualified public accountant designated by them, its payroll books and records. Such books and records shall include (a) all records which the employer may be required to maintain under Section 209(a)(l) of the Employee Retirement Income Security Act of 1974, and (b) time cards, payroll journals, payroll check registers, cancelled payroll checks, copies of the employer's federal, state, and local payroll tax reports, and all other documents and reports which reflect the hours and wages or other compensation of the employees or from which such can be verified (or electronic versions thereof).

— 27 —

In the event the payroll audit discloses that the participating employer has not paid contributions, as required by the applicable collective bargaining agreement, subscription agreement, or special agreement, the employer shall be liable for the costs of the audit.

6.   *Liquidated Damages, Attorney Fees, Interest, and Other Charges*

It is recognized and acknowledged by all parties, including the participating employers, that the prompt and accurate payment of contributions is essential to the maintenance of an employee benefit trust fund and benefit plan and that it would be extremely difficult, if not impossible, to fix the actual expense and damage to the trust fund and plan which would result from the failure of a participating employer to pay the required contributions within the time provided.

Therefore, if an employer is delinquent in the payment of contributions by the tenth (10th) day following the contribution due date, or by such other date as the Board of Trustees may from time to time establish, the delinquent employer shall be liable, in addition, for liquidated damages of ten percent (10%) of the amount of the contributions which are owed, or twenty five dollars ($25), whichever is greater.

If the delinquent contributions or liquidated damages are not paid by the tenth (10th) day of the month following the month in which they were due, or by such other date as the Board of Trustees may from time to time establish, the account will be referred to legal counsel, or a collection agent, for collection. Upon such referral, the delinquent employer shall be liable for reasonable attorney fees and for reasonable costs incurred in the collection process, including court fees, audit fees, etc. In addition, delinquent contributions shall bear interest at the rate of ten percent (10%) per annum until paid, computed from the contribution due date.

7.   *Additional Liquidated Damages in Event of Court Judgment*

In the event it is necessary to pursue a collection to a court judgment, the delinquent employer shall be liable for additional liquidated damages of ten percent (10%) of the amount of the contributions which are owed, making a total of twenty percent (20%). As provided in Section 515 of the Employee Retirement Income Security Act of 1974, as amended, the employer shall, if a judgment is entered, be obligated to the Trust Fund for the unpaid contributions, interest on the unpaid contributions, liquidated damages of twenty percent (20%), reasonable attorney's fees and costs, and such other legal or equitable relief as may be appropriate.

8.   *Waiver of Charges*

The Trustees shall have the authority to waive all or part of the payroll audit costs, liquidated damages, interest, attorney fees, or collection costs, for good cause shown.

9.   *Protection of Employees in Cases of Delinquency*

To protect participating employees and beneficiaries in situations where participating employees may be denied pension credits because their employer is delinquent in the payment of contributions, the Trustees shall have the authority to extend pension credits to such employees.

The extension of pension credits shall not, however, release the delinquent employer from the responsibility for payment of the contributions owed.

— 28 —

10.  *Coordination with Provisions in Collective Bargaining Agreements*

In the event the underlying collective bargaining agreement contains provisions relating to delinquencies that specify additional remedies, or obligate the delinquent employer to greater amounts of liquidated damages, interest, or attorney fees than those set forth herein, the Trustees, at their option, may pursue the additional remedies or impose the greater charges.

The Trustees shall not be obligated, however, to pursue the collection of delinquent accounts through the grievance-arbitration procedures (if any) provided for in the applicable collective bargaining agreement.

— 29 —

# ARTICLE X
# EMPLOYER WITHDRAWAL LIABILITY

1.   *Calculation and Collection of Employer Withdrawal Liability*

As provided in the Multi-Employer Pension Plan Amendments Act of 1980 (PL 96-364) (hereafter the Act), in the event a participating employer should withdraw from the Trust Fund, the Board of Trustees shall (a) determine the amount of the employer's withdrawal liability (if any), (b) notify the employer of the amount of the withdrawal liability and (c) collect the amount of withdrawal liability from the employer. In carrying out this responsibility the Board of Trustees shall apply the terms and provisions of the Act, and any regulations issued thereunder, provided, however, that the Board of Trustees may from time to time adopt alternate methods or formulae as permitted in the Act.

Sections 2, 3, and 4, set forth hereafter, have been adopted as alternates under the Act.

2.   *Determination of Amount of Unfunded Vested Benefits Allocable to Withdrawing Employer*

As allowable under 4211(a) of the Act, the Board of Trustees shall determine the amount of unfunded vested benefits allocable to a withdrawing employer in accordance with the formula set out in Section 4211(b) of the Act, and any regulations issued thereunder, with the following modifications: (a) the initial pool will be based on the December 31, 2006 unfunded vested benefit liability, reduced by the value of all outstanding claims for withdrawal liability that the Trust Fund can reasonably expect to receive for employers withdrawing before 2006, (b) the calculation of subsequent pools established for changes in unfunded vested benefits as defined in 4211(b) (2) (B) of the Act will continue to reflect the value of all outstanding claims for withdrawal liability that the Trust Fund can reasonably expect to receive for employers withdrawing before 2006, and (c) in any Plan year where the unfunded vested benefit liability at the end of the prior year is zero, the unfunded vested benefit liability allocation pools for prior years will be considered fully amortized and reset to zero.

In making such a determination, reasonable actuarial assumptions and methods shall be applied as allowable under Section 4213(a)(1) of the Act and as determined by the Fund's actuary.

3.   *Payment of Withdrawal Liability in Monthly Installments*

As allowable under Section 4219(c)(3) of the Act, the annual withdrawal liability payments owing to this Trust Fund by a withdrawing employer shall be payable in twelve equal monthly installments, due on the first (1st) day of each month, in advance.

4.   *Adoption of Administrative Rules and Regulations*

The Board of Trustees shall adopt administrative rules and regulations relating to the processing of employer withdrawal situations.

5.   *Notice of Potential Withdrawal Liability*

As provided in Section 101(1) of the Employee Retirement Income Security Act of 1974, the Board of Trustees shall, upon written request, furnish to any employer who has an obligation to contribute to the Fund (a) a notice of the estimated amount of what would

— 30 —

be the employer's withdrawal liability if the employer withdrew on the last day of the plan year preceding the date of the request, and (b) an explanation of how such estimated withdrawal liability was calculated, including (i) the actuarial assumptions and methods used to determine the value of the Retirement Benefit Plan's liabilities and assets; (ii) the data regarding employer contributions, unfunded vested benefits and annual changes in the Retirement Benefit Plan's vested benefits; and (iii) changes in the application of any relevant limitations in the estimated withdrawal liability. Such notice shall be furnished to the requesting employer within 180 days after the request but in no case shall an employer be entitled to receive more than one such notice during any one 12-month period. The Board of Trustees shall impose a reasonable charge on each employer requesting such a notice.

— 31 —

# ARTICLE XI
## BENEFIT CLAIM, HEARING AND ARBITRATION PROCEDURES

1. *Hearings Required*

The Trustees shall afford a hearing to any participating employer, employer association, or labor organization who is aggrieved by any decision or action of the Trustees, or of the administrative manager acting on their behalf. The aggrieved party may present the appeal in person, or through a representative, or by written submission.

It shall be the obligation of any such person to exhaust the hearing procedures specified in this Article before instituting final and binding arbitration concerning any such decision or action.

2. *Requests for Hearings*

Any person seeking a hearing shall make a request therefore, in writing, within sixty (60) days after being apprised of, or learning of, the complained of decision or action. All such requests shall be addressed to the Trustees and shall be mailed to the Trust Fund's administrative office.

3. *Conduct of Hearings*

Upon receipt of a request for a hearing, the Trustees shall fix a date and place for a hearing. At the hearing, the complaining person shall be entitled to present his position and any witnesses or other evidence in support thereof. The complaining person may be represented by an attorney or by any other representative of his choosing. In the alternative, the complaining person may choose to present his appeal by written submission.

The Trustees shall, within thirty (30) days following the hearing, issue a written decision affirming, modifying, or setting aside the former decision or action.

4. *Hearing Rules*

The Trustees shall have the authority to adopt rules governing the conduct of any such hearing.

5. *Arbitration - Mandatory*

If the complaining person is dissatisfied with the written decision of the Trustees, he shall have the right to appeal the matter to mandatory, final and binding arbitration in accordance with the labor arbitration rules or the employee benefit claim rules of the American Arbitration Association, provided that he submit a request for arbitration to the Trustees, in writing, within sixty (60) days of receipt of the written decision. If an appeal to arbitration is requested, the Trustees shall submit to the arbitrator a certified copy of the record upon which the Trustees' decision was made.

The question for the arbitrator shall be (1) whether the Trustees were in error upon an issue of law, (2) whether they acted arbitrarily or capriciously in the exercise of their discretion, or (3) whether their findings of fact were supported by substantial evidence. The decision of the arbitrator shall be final and binding upon the Trustees, upon the appealing party, and upon all other parties whose interests are affected thereby. The expenses of the arbitration shall be borne equally by the appealing party and by the Trust Fund, unless otherwise ordered by the arbitrator.

— 32 —

6.   *Benefit Claim and Review Procedures for a Participating Employee or Beneficiary*

    The Trustees shall provide benefit claim and review procedures for any participating employee or beneficiary who has made a claim for benefits and is aggrieved by any decision or action of the Trustees, or of the administrative manager acting on their behalf. The aggrieved party may present the appeal under the Benefit Claim and Review Procedures set out in Article XIII, Section 5 of the Retirement Benefit Plan.

7.   *Sole and Exclusive Remedies*

    These Benefit Claim, Hearing and Arbitration procedures are the sole and exclusive remedies for all complaining persons.

— 33 —

# ARTICLE XII
## LIMITATIONS

1.   *Liabilities and Debts of Trust Fund*

No participating employer, employer association, or labor organization, shall be responsible for any liabilities or debts of the Trust Fund. This provision, however, shall not relate to any liability that may be imposed upon a participating employer under Section 4971 of the Internal Revenue Code or Title IV of the Employee Retirement Income Security Act of 1974, as amended by the Multi-Employer Pension Plan Amendment Act of 1990.

2.   *Liabilities and Debts of Participating Parties*

No participating employer, employer association, or labor organization shall, by reason of their participation in the Trust Fund, become responsible for the liabilities or debts of any other participating employer, employer association, or labor organization.

3.   *Personal Liabilities of Trustees and Fiduciaries*

No Trustee or other fiduciary shall incur any personal liability in connection with the administration of the Trust Fund or the Retirement Benefit Plan, except for such liability that may be established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974.

Except as may be required by applicable provisions of such Act, no Trustee or other fiduciary shall be held personally liable for any breach of fiduciary responsibilities in connection with the administration of the Trust Fund or the Retirement Benefit Plan where it is established (a) that the responsibilities at issue were lawfully allocated or delegated to other Trustees or fiduciaries or (b) that in carrying out the responsibilities at issue the Trustee or other fiduciary reasonably relied upon the advice given by the administrative manager or by one or more of the professional persons employed by the Trustees.

No Trustee or other fiduciary shall be personally liable for a breach of fiduciary responsibilities if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

4.   *Judgments Against Trust Fund*

Any money judgment against the Trust Fund shall be enforceable only against the Trust Fund entity and shall not be enforceable against any Trustee or other person, unless liability against the Trustee or other person, in his individual capacity, is established in accordance with Section 409(a) of the Employee Retirement Income Security Act of 1974.

5.   *Participating Parties' Rights*

Except as specifically provided for in this Trust Agreement or in the Retirement Benefit Plan, no participating employer, employer association, labor organization, employee, or beneficiary shall have any right, title, or interest in or to the Trust Fund, or in or to the contributions, or in or to the benefits provided.

No participating employee shall be entitled to receive any part of the contributions in lieu of the benefits provided through the Retirement Benefit Plan, nor shall a participating employee who does not qualify for benefits, or his employer, have any claim to the con-

— 34 —

tributions which may have been paid on his behalf.

6.    *Cessation of Participation*

In the event a participating employer, employer association, or labor organization, or groups thereof, should cease their participation in the Trust Fund, there shall be no division or allocation of any of the monies or assets of the Trust Fund, except as may be specified in the Retirement Benefit Plan or required by law.

7.    *Protection of Trust Fund, Contributions, and Benefits*

No part of the Trust Fund (including the contributions) or the benefits payable under the Retirement Benefit Plan, shall be subject in any manner, by a participating employee or beneficiary, to anticipation, alienation, sale, transfer, assignment, encumbrance, or charge, and any such attempt shall be null and void except as may be required under Section 206(d) of the Act, as amended (a QDRO).

Further, no part of the Trust Fund (including the contributions), or the benefits payable under the Retirement Benefit Plan, shall be liable for the debts of a participating employee or beneficiary, nor be subject in any manner to garnishment, attachment, lien, charge, or any other legal process brought by any person against a participating employee or beneficiary, and any such attempt shall be null and void except as may be required under Section 206(d) of the Act, as amended (a QDRO).

8.    *Reliance upon Written Documents*

The Trustees may act upon any written letter, report, certificate, instrument, or other document submitted to them by any participating employer, employer association, labor organization, employee, or beneficiary, or by any other person, where such document appears to be genuine and to be signed by the proper person or persons and the Trustees shall be under no duty to make any investigation or inquiry as to any statement contained in any such document.

9.    *Agents of Trust Fund*

Unless authorized in a motion or resolution of the Trustees, no participating employer, employer association, or labor organization, nor any individuals employed thereby, shall have any authority to act or function for or on behalf of the Trust Fund or as agent thereof.

Likewise, unless authorized in a motion or resolution of the Trustees, no individual Trustee or other fiduciary shall have any authority to act or function for or on behalf of the Trust Fund or as an agent thereof.

# ARTICLE XIII
# MISCELLANEOUS

1.  *Trust Fund Offices*

   The Trust Fund shall maintain a principal office and suboffices, where necessary, in such locations as the Trustees may determine.

2.  *Applicable Laws and Regulations*

   This Trust Agreement and the Retirement Benefit Plan shall be interpreted and administered in accordance with Section 302(c) of the Labor Management Relations Act of 1947, the Employee Retirement Income Security Act of 1974, the Internal Revenue Code, and the regulations pertinent thereto, and other applicable statutes and regulations, as such statutes and regulations presently exist or as they may hereafter be amended. Any omissions or oversights will be resolved in accordnce with the laws and regulations.

   References herein to particular sections of the above mentioned statutes shall include any regulations pertinent to such sections and shall encompass any subsequent amendments to such sections or regulations.

3.  *Notices*

   Any written notice permitted or required by this Trust Agreement shall be personally delivered to the person for whom it is intended or sent to such person, at his residence or business address, by first class mail. Any such notice may also be delivered by email, facsimile transmission, or other electronic means available as may be allowed by law.

4.  *Severability*

   If any provision of this Trust Agreement, or of the Retirement Benefit Plan is held to be illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining portions of the Trust Agreement or the Retirement Benefit Plan.

5.  *Title — Words*

   The titles of the various articles and sections of this Trust Agreement are inserted solely for convenience of reference and are not a part of, nor shall they be used to construe, any term or provision hereof. Whenever any words are used herein in the masculine gender they shall be construed as though they were used in the feminine gender, and words in singular form shall be construed as though they were used in the plural form, in all cases where they would so apply.

6.  *Information to be Furnished and Distributed*

   To aid the Trustees in the administration of the Trust Fund, the participating employers, employer associations and labor organizations shall furnish the Trustees with such information as they may determine including (a) copies of collective bargaining agreements, (b) contribution rates, (c) the identity of employees covered by collective bargaining agreements, subscription agreements or participation agreements, and their social security numbers, (d) reports on compensated hours for all employees who have worked in the bargaining unit or as a nonbargaining unit employee whether or not a contribution has been paid, (e) reports on all hours or shifts or wages which constitute the basis of the contribution made to the Retirement Benefit Plan as provided in the collective bargaining agreement, subscription agreement or participation agreement, and (f) reports on actual contributions owed broken down by each employee.

## ARTICLE XIV
## AMENDMENTS AND TERMINATION

1.   *Amendments*

   This Trust Agreement may be amended by action of the Trustees, except that the Trustees shall make no amendment to Article III without the unanimous written consent of the Trustees and the remaining signatory parties (or their successors).

   In the event that the Trustees should propose an amendment to Article III, they shall deliver copies thereof to the remaining signatory parties (or their successors). If any signatory party (or successor thereto) fails, within thirty (30) days, to respond to a written request for consent to any such amendment, that signatory party will be deemed to have waived its right to act upon such amendment.

2.   *Termination*

   This Trust Agreement may be terminated, at anytime, by unanimous action of the Trustees and the remaining signatory parties (or their successors).

3.   *Allocation upon Termination*

   If the Plan is terminated, all assets remaining in the Trust Fund after the payment of all expenses incurred in terminating or administering the Plan will be allocated to the benefit of participating employees, retired employees, and surviving spouses, according to the following order of priority:

   (a)   First, the remaining assets shall be allocated equally to (1) benefits in pay status three years prior to termination at the lowest benefit level under the plan during the five years prior to termination, and *(2)* benefits which would have been in pay status three years prior to termination had the employee been retired (and had his benefits commenced then, at the lowest benefit level under the plan during the five years prior to termination.)

   (b)   Second, the assets remaining after satisfying the benefits described in section (a) above shall be allocated equally to all other benefits guaranteed under Title IV of the Employee Retirement Income Security Act of 1974, (irrespective of the limitations on the amount of monthly benefits and regardless of the number of plans in which the employee participated).

   (c)   Third, the then remaining assets shall be allocated equally to all other non-forfeitable (vested) benefits under the plan.

   (d)   Fourth, the then remaining assets shall be allocated equally to all other benefits under the plan.

   If the assets of the Trust Fund applicable to any of the above categories (a) and (b) are insufficient to provide fully the amount of the benefits in each category, the benefits otherwise payable shall be reduced proportionately.

   If the assets of the Trust Fund applicable to category (c) are insufficient to provide fully the amount of the benefits in that category, the assets shall be allocated to the benefits of individuals which are described in that category on the basis of benefits of individuals which would have been described in category (c) under the Plan as in effect at the beginning of the 5-year period ending on the date of plan termination.

— 37 —

If the assets available for allocation under the preceding paragraph are sufficient to satisfy in full the benefits described in that paragraph, then for purposes of that paragraph, benefits of individuals described in that paragraph shall be determined on the basis of the Plan as amended by the most recent Plan amendment effective during such 5-year period under which the assets available for allocation are sufficient to satisfy in full the benefits of individuals described in the preceding paragraph and any assets remaining shall be allocated under that paragraph on the basis of the Plan as amended by the next succeeding plan amendment effective during such period.

The amount allocated under any of the priority categories listed above with respect to any benefit shall be adjusted for any allocation of assets with respect to that benefit under a prior category.

The amount allocated to each benefit shall be used to provide monthly retirement benefit payments through continuance of the Trust Fund, or through a new Trust Fund, or for the purchase of insurance annuity contracts; provided that, if the Trustees find that it is not practical or desirable under the circumstances to do any of the foregoing, they may provide for some other means of disposing of the allocations of the Trust Fund, including making payments in cash to the persons for whom such allocations have been made.

In no event shall any of the remaining monies or assets be paid to or be recoverable by any participating employer, employer association, or labor organization.

— 38 —

### SIGNATORY PARTIES *as of March 25, 1976*

| **<u>Labor Organization Signatory Parties</u>** | | ***<u>Employer Signatory Parties</u>*** | |
|---|---|---|---|
| International Printing & Graphic Communications Union | | Seattle Post-Intelligencer (Division of Hearst Publishing Company, Inc.) | |
| By | Sol Fishko | By | Gerald W. Hedman |
| Title | President | Title | Director of Personnel & Labor Relations |
| Date | March 25, 1976 | Date | March 25, 1976 |
| | | | |
| Printing Specialties and Paper Products Unions, IP & GCU | | Seattle Times Company | |
| By | Sol Fishko | By | Harold Fuhrman |
| Title | President, IP & GCU | Title | Vice President & General Mgr. |
| Date | March 29, 1976 | Date | March 25, 1976 |
| | | | |
| Seattle Web Pressman Local No. 26 IP & GCU | | Los Angeles Paper Box and Board Mills | |
| By | George G. Peterson | By | William H. Kewell, Jr. |
| Title | 2nd V.P. #26 Seattle | Title | President |
| Date | March 25, 1976 | Date | March 25, 1976 |
| | | | |
| Los Angeles Commercial Pressmen Local No. 78, IP & GCU | | Bay Area Paper Box Employers | |
| By | Frank Calderone | By | Edward H. Moore |
| Title | President | Title | Secretary |
| Date | March 25, 1976 | Date | June 7, 1976 |
| | | | |
| | | Printing Industries Association (Union Employers Section - Los Angeles) | |
| | | By | Jerry Maras |
| | | Title | Representative |
| | | Date | March 25, 1976 |

### SIGNATORY PARTIES *as of July 1, 1984*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressman No. 78, IP & GCU) |
| Graphic Communications Union No. 777 (successor to Printing Specialties and Paper Products Union, IP & GCU) | Seattle Times Company |
| | Bay Area Paper Box Employers |
| Seattle Newspaper Pressmen Local No. 26, GCIU | Printing Industries Association (Union Employers Section—Los Angeles) |

— 39 —

**Note:** On September 9, 1988, the three remaining employer signatory parties, the Seattle Times, the Bay Area Paper Box Employers, and the Printing Industries Association (Union Employers Section) - Los Angeles, agreed, in writing, to irrevocably and unconditionally transfer and assign to the incumbent employer trustees and their successors all of their rights and powers under this Trust Agreement and to forever resign their positions as employer signatory parties.

**SIGNATORY PARTIES** *as of September 1, 1990*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU) |
| Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777) | Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressmen No. 78, IP & GCU) |

**SIGNATORY PARTIES** *as of September 1, 1999*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU) |
| Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777) | Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressmen No, 78, IP & GCU) |

**SIGNATORY PARTIES** *as of September 1, 2012*

| | |
|---|---|
| Graphic Communications International Union (successor to International Printing & Graphic Communications Union) | Graphic Communications Union, Local No. 767-M (successor to Seattle Newspaper Pressmen Local No. 26, GCIU) |
| Graphic Communications Union, Local No. 388-M (successor to Graphic Communications Union, No. 777) | Graphic Communications Union, Local No. 404-M (successor to Los Angeles Commercial Pressmen No, 78, IP & GCU) |

— 40 —

### LIST OF TRUSTEES *as of January 1, 1976*

| Employer Trustees | Labor Organization Trustees |
|---|---|
| Harold Fuhrman | Sol Fishko |
| Charles Woessner | Robert O'Neil |
| Joseph Conley | Jack McCormick |
| Jerry Maras | Don McCaughan |
| Frank Hurlburt | George Peterson |
| William Kewell, Jr. | Frank Calderone |
| | Wade Moore |

| **Alternate Employer Trustees** | John Millan |
|---|---|
| Gerald Hedman | Floyd F. Lisinski |
| Walter Taylor | |
| O.H. Rieth | **Alternate Labor Organization Trustees** |
| Lad Sabo | George Barnett |
| | George Gates |
| | Cy Quinn |

### LIST OF TRUSTEES *as of September 1, 1990*

| Employer Trustees | Labor Organization Trustees |
|---|---|
| Joseph Conley | James Western |
| Harold Fuhrman | George Barnett |
| Jerry Maras | Wade Moore |
| O.H. Rieth | Floyd Lisinski |
| Donald Scheiber | William Roberts |
| David Stanger | James Norton |
| | Gary Dunmire |
| | Robert Bartlett |
| | William Clark |

### LIST OF TRUSTEES *as of September 1, 1999*

| Employer Trustees | Labor Organization Trustees |
|---|---|
| Joseph Conley | Frank P. Young |
| Harold Fuhrman | William Clark |
| Hugh Gaylord | John A. Giannone |
| Jerry Maras | Stephen E. Northup |
| Thomas E. Phillips | James J. Norton |
| Nate Accardi | Edward A. Treacy |
| Jim Janiga | John D. Bachler |
| | **Alternate Labor Organization Trustees** |
| | George Osgood |
| | Ryan Sherard |
| | Paul E. Golden |

— 41 —

# Notes



GCIU-Employer Retirement Fund

AMENDMENT NO. 1
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund, at a meeting on August 20, 2013, did adopt the following amendment to Article IV, Section 2, "Constitution of a Quorum," of the Trust Agreement governing the GCIU-Employer Retirement Fund.  This Amendment is effective August 20, 2013.

Article IV, "Trust Fund Administration," Section 2, "Constitution of a Quorum," is hereby deleted and replaced with the following:

"2.  Constitution of a Quorum

To constitute a quorum at any meeting of the Trustees there must be present at least 50% of the Employer Trustees, or duly designated alternates, and 50% of the Labor Organization Trustees, or duly designated alternates."

Dated this 20th day of August 2013.


_____          _____
            Chairman                                  Secretary

GCIU-Employer Retirement Fund

AMENDMENT NO. 2
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund, at a meeting on February 18, 2015, did adopt the following amendment to Article VI, Section 9, "Specifically Permitted Investments," of the Trust Agreement governing the GCIU-Employer Retirement Fund.  This Amendment is effective February 18, 2015.

Article VI, "Trustee Responsibilities," Section 9, "Specifically Permitted Investments," is hereby revised to read as follows:

"9.  Specifically Permitted Investments

* * *

Finally, to the extent permitted by law, the monies of the Trust Fund may also be invested in certain alternative investments and investment vehicles, including, but not limited to, mutual funds, REITS, private equity funds, infrastructure funds, private debt funds, and instruments comprising risk parity and real return strategies, subject to the investment criteria set out in Section 8 above."

Dated this __10th__ day of April 2015.

_____
Chairman

_____
Secretary

GCIU-Employer Retirement
Fund, et. al. v. Service Press, Inc.

EXHIBIT 1 to COMPLAINT - 61

GCIU-Employer Retirement Fund

AMENDMENT NO. 3
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)


This is to certify that the Board of Trustees of the GCIU-Employer Retirement Fund ("Fund"), at a meeting on November 17, 2015, did adopt the following Amendment to Article VI, "Trustee Responsibilities," Section 20, "Documents to be Examined or Furnished," of the Trust Agreement governing the GCIU-Employer Retirement Fund for compliance with the Multiemployer Pension Reform Act of 2014. This Amendment is effective January 1, 2015.

Article VI, "Trustee Responsibilities," Section 20, "Documents to be Examined or Furnished," is amended to delete the third paragraph in its entirety and replace it with the following:

"**20. Documents to Be Examined or Furnished**

\* \* \*

The Trustees shall also, upon written request by a participating employee or beneficiary, labor organization, or participating employer furnish to the participating employee or beneficiary, labor organization, or participating employer a copy of a) the current plan document (including any amendments thereto), b) the latest summary plan description of the plan, c) the current trust agreement (including any amendments thereto, d) the applicable collective bargaining agreement and/or participation agreement for the current Plan Year or any of the five immediately preceding Plan Years, e) the annual report for any Plan Year, f) the Trust Fund funding notice for any Plan Year, g) any periodic actuarial report (including any sensitivity testing) received by the Trust Fund for any Plan Year which has been in the Trust Fund's possession for at least 30 days, h) any

1

quarterly, semi-annual, or annual financial report prepared for the Trust Fund by any Fund Investment Manager or advisor or other fiduciary which has been in the Trust Fund's possession for at least 30 days, i) audited financial statements for the Trust Fund for any Plan Year, j) any application filed with the Secretary of the Treasury requesting an extension under Section 304(d) of the Act or Section 431(d) of the Internal Revenue Code of 1986 and the determination of such Secretary pursuant to such application, and k) in the case where the Trust Fund was in critical or endangered status under Section 305 of the Act for a Plan Year, the latest funding improvement or rehabilitation plan, and the contribution schedules applicable with respect to such funding improvement or rehabilitation plan (other than a contribution schedule applicable to a specific participating employer, if any), as required by Section 101(k) of the Act subject to any limitations imposed by Section 101(k) of the Act with regard to individually identifiable information and proprietary information.

In accordance with Section 101(k) of the Act, such copies shall be furnished within 30 days of the request. In no case shall a participating employee or beneficiary, labor organization, or participating employer be entitled to receive more than one copy of any document in the paragraph above during any one 12-month period, or, in the case of any document described in items (e), (f), (g), (h), or (i) of the paragraph above, a copy of any document that as of the date on which the request is received by the Trust Fund, has been in the Trust Fund's possession for 6 years or more. The Trustees may impose a reasonable charge to cover copies, mailing, and other costs of furnishing copies of the information as may be allowed by regulations of the Secretary of Labor."

* * *

Executed this 17th day of November 2015.

_____
Chairman

_____
Secretary

2

FINAL
11/13/18

GCIU-Employer Retirement Fund

AMENDMENT NO. 4
TO THE TRUST AGREEMENT GOVERNING
THE GCIU-EMPLOYER RETIREMENT FUND
(as revised and restated December 1, 2012)

This is to certify that the current Labor Organization Trustees of the GCIU-Employer Retirement Fund did adopt the following Amendments to Article II, "Definitions," Section 12, "Signatory parties"; Article III, "The Trustees," Section 8, "Appointment of Successor Labor Organization Trustees"; Article III, "The Trustees," Section 12, "Termination of Appointment by Appointing Entity"; and Article XIV, "Amendments and Termination," Section 1, "Amendments," and Section 2, "Termination," of the Trust Agreement governing the GCIU-Employer Retirement Fund. This Amendment is effective November 13, 2018.

1.   Under Article II, "Definitions," Section 12, "Signatory parties," is hereby deleted in its entirety and the remaining Sections renumbered accordingly.

2.   Under Article III, "The Trustees," Section 8, "Appointment of Successor Labor Organization Trustees," is deleted in its entirety and replaced with the following:

"Article III
THE TRUSTEES

\* \* \*

8.   Appointment   of   Successor   Labor   Organization Trustees

In the event of the termination of appointment, resignation, or death of a Labor Organization Trustee, a successor Labor Organization Trustee shall be nominated by the President of the GCC-Conference of the IBT (or his named representative) and then approved/appointed by a majority of the current Labor Organization Trustees at the time of the nomination(s).

1

The GCC-Conference of the IBT shall be entitled to one Labor Organization Trustee.  In addition, only one Labor Organization Trustee shall be permitted from the same local union and/or its affiliated District Council at any time."

3.   Under Article III, "The Trustees," Section 12, "Termination of Appointment by Appointing Entity," the second and third paragraphs are deleted in their entirety and replaced with the following:

"Article III
THE TRUSTEES

\* \* \*

12.   Termination of Appointment by Appointing Entity

\* \* \*

The appointment of  a Labor Organization Trustee may be terminated, at any time, by a majority action of the current Labor Organization Trustees for the reasons set forth in Article III, Sections 13, 14, and 15.

The termination of a Trustee's appointment shall be effective upon the termination date specified in a written notice of termination, executed by the group of appropriate Employer Trustees or Labor Organization Trustees, as applicable.  Any such notice shall be addressed to the Trustees and shall be mailed to the Trust Fund's Administrative Office."

4.   Under Article XIV, "Amendments and Termination," Section 1, "Amendments," is hereby deleted in its entirety and replaced with the following:

"Article XIV
AMENDMENTS AND TERMINATION

1.   Amendments

This Trust Agreement may be amended at any time by action of the Trustees."

2

GCIU-Employer Retirement
Fund, et. al. v. Service Press, Inc.

EXHIBIT 1 to COMPLAINT - 65

5.   Under Article XIV, "Amendments and Termination," Section 2, "Termination," is hereby deleted in its entirety and replaced with the following:

"Article XIV
AMENDMENTS AND TERMINATION

* * *

2.   Termination

     This Trust Agreement may be terminated, at any time, by unanimous action of the Trustees."

* * *

6.   All other ancillary references to the "remaining Signatory parties" and/or "Signatory party(ies) are hereby deleted and an appropriate notation will be reflected on page 40 of this Agreement.


     Executed this 13th day of November 2018 by the Labor Organization Trustees.


Ralph M. Meers
as Alternate Trustee for
Edward A. Treacy
Labor Organization Trustee

John D. Bachler
Labor Organization Trustee


George Tedeschi
Labor Organization Trustee

3

# EXHIBIT 2





## MASTER COMMERCIAL LABOR AGREEMENT

between

# SERVICE PRESS
## SAN CARLOS, CA

and

# TEAMSTERS DISTRICT COUNCIL 2
## Affiliated with the Graphic Communications Conference ~ International Brother of Teamsters
## LOCAL 388M



### October 1, 2013 - September 30, 2018

## TABLE OF CONTENTS

SECTION                                                                                           PAGE

    Introduction ...........................................................................................................1
1    Life of Agreement ...............................................................................................1
2    Jurisdiction ...........................................................................................................1
3    Union Security .....................................................................................................1
4    Union Dues and Initiation Fees .........................................................................1
5    Hiring of Help ......................................................................................................2
6    Equal Employment / Non Harassment ...............................................................3
7    New Presses, Processes or Equipment .............................................................5
8    Reporting Pay ......................................................................................................5
9    Minimum Shifts ...................................................................................................6
10    Hours of Employment .........................................................................................6
11    Posting of Hours .................................................................................................7
12    Stand-By .............................................................................................................7
13    Call Back .............................................................................................................7
14    Overtime ..............................................................................................................7
15    Holidays ..............................................................................................................8
16    Vacation ..............................................................................................................9
17    Bereavement Leave ..........................................................................................10
18    Leave of Absence .............................................................................................10
19    Injuries on Job ..................................................................................................11
20    Sick Leave ........................................................................................................11
21    Discharge ..........................................................................................................12
22    Length of Service – Layoff and Rights of Recall .............................................13
23    Shift Changes ...................................................................................................14
24    Shop Rules and Bulletin Boards .......................................................................14
25    Sanitation and Health .......................................................................................14
26    Chapel Meetings ...............................................................................................15
27    Change of Ownership .......................................................................................15
28    Officials Right to Visit .......................................................................................15
29    Savings Clause .................................................................................................15
30    Struck Work .......................................................................................................15
31    Western States Income Security Fund .............................................................16
32    Variable Supplemental Contributions ...............................................................16
33    Health and Welfare ...........................................................................................18
34    Joint Conciliation Committee ............................................................................19
35    Government Regulations ...................................................................................19
36    Feminine/Masculine Gender .............................................................................20
37    Apprentice and Training ...................................................................................20
    Signature Page .................................................................................................20
    SIP Memorandum of Agreement ......................................................................21
    Wages ...............................................................................................................22

i

## AGREEMENT

This Agreement is made and entered into by **Service Press** herein after referred to as the "Employer" and the **Teamsters Union, District Council 2, Local 388M** hereinafter referred to as the "Union".

## SECTION 1
## LIFE OF AGREEMENT

1.1    This Agreement shall be effective October 1, 2013 through September 30, 2018, and shall be subject to sixty (60) days notice by either party prior to September 30, 2018, or any date thereafter, of a desire to negotiate changes in this Agreement.

## SECTION 2
## JURISDICTION

2.1   The Employer recognizes the Union as the sole Collective Bargaining Agent representing all the employees in the production unit or covered by titles included in the wage section of this Agreement.  The jurisdiction of the Agreement shall cover those employees involved in producing printed materials and related products.

Upon the introduction of equipment, which replaces or serves as a substitute for, or evolution of present equipment, it is agreed that the work will be performed by employees covered by this Agreement.

2.2   Nothing in this Agreement shall apply to:  (a) existing operations of the Employer which are manned under a Collective Bargaining Agreement with any other Labor Union as long as such other Collective Bargaining Agreement or renewal thereof continues in effect; (b) any work now being performed by any department of the Employer other than the above, or (c) any material that is now furnished to the Employer from outside sources.

## SECTION 3
## UNION SECURITY

3.1     All employees as a condition of continued employment shall maintain membership in the Union on or after the ninety (90) days following the beginning of employment, the effective date of this agreement or the date of ratification, whichever is later.

3.2     Upon ten (10) days notice from the Union, the Employer agrees that he will discharge any employee who fails to offer to pay uniform dues or initiation fees as required by the Union.

## SECTION 4
## UNION DUES AND INITIATION FEES

4.1     The Employer agrees to deduct the regular monthly Union dues from the earnings of each employee from whom a written authorization is received by the Employer, on a payroll period basis.  Such authorization shall be irrevocable for the period of one (1) year from the date of delivery thereof to the Employer or until the termination of the Collective Bargaining Agreement

l

between the Employer and the Union, whichever is shorter, unless written notice ( in timely compliance with the revocation provision shown on the signed authorization) is given by the employee to the Employer and the Union prior to the expiration of each period of one (1) year or of each applicable Collective Bargaining Agreement between the Employer and the Union whichever occurs sooner.

4.2     The Employer also agrees to deduct the regular initiation fees for new employees from whom a written authorization has been received.

4.3     The monies thus deducted on a payroll period basis will be transmitted to the Union monthly.

4.4     The Union accepts full responsibility for the authenticity of each and every authorization submitted to the Employer and shall indemnify and save the Employer harmless from any claims, suits, judgments, attachments, in accordance with any such authorizations.  The Union agrees to refund promptly to the Employer any such dues or fees found to have been erroneously or improperly deducted.

4.5     Each January, April, July and October, the Employer shall provide the Union with a complete current list of all employees covered by the terms of this Agreement.  Such list shall include the following current information for each employee:

> Name
> Social Security Number
> Date of Hire
> Straight time hourly wage rate including red circle, if any
> Hourly premiums regularly paid, if any
> Shift

## SECTION 5
## HIRING OF HELP

5.1     The Union agrees to furnish competent and skilled workmen as required to operate specific types of presses and other operations under the jurisdiction of this Agreement to the best of their ability.

5.2     The Employer agrees to inform the Union of all position vacancies in the bargaining unit.

5.3     The Union agrees to maintain an out-of-work list of competent employees for the proper operation of the press and related departments as covered by this Agreement.  The Union agrees to furnish competent applicants, if available, in a non-discriminatory manner.

5.4     When the request for help is made the Employer will advise the Union if he is hiring the man or wants him for an interview.

5.5     The Probationary period for new employees shall be for a period of ninety (90) days.  The employer shall have no responsibility for the rehiring of probationary employees laid off during the

2

probationary period.   Termination of probationary employees is not subject to grievance or arbitration.

## SECTION 6
## EQUAL EMPLOYMENT/ NON HARASSMENT

6.1     The Company and the Union agree that they shall not discriminate against any employee or applicant for employment for the protected categories mentioned below:

6.2     The Company is an equal opportunity employer and makes employment decisions on the basis of merit.  We want to have the best available people in every job.  Therefore, the Company and the Union will not discriminate, and will not permit its employees to discriminate against other employees or applicants because of race, color, religion, sex, religious creed, sexual orientation, gender identity or expression, pregnancy, marital status, national origin, citizenship, veteran status, ancestry, age, physical or mental disability (an impairment that limits a major life activity), medical condition (cancer-related), genetic characteristic, including the perception that a person has any of those characteristics or that the person is associated with a person who has, or is perceived to have, any of those characteristics or any other consideration made unlawful by applicable laws.  Equal employment opportunity will be extended to all persons in all aspects of the employer-employee relationship, including recruitment, hiring, upgrading, training, promotion, transfer, discipline, layoff, recall and termination.

6.3   Non-Harassment Policy—Harassment in employment, including sexual, racial, and ethnic harassment, as well as any other harassment forbidden by law, is strictly prohibited by the Company.    Employees who violate this policy are subject to discipline, including possible termination.
Racial, ethnic and other forms of prohibited harassment include, but are not limited to:

(1)      Visual contact, including displaying of derogatory objects or pictures, cartoons, or posters;

(2)      Verbal conduct, including making or using derogatory comments, epithets, slurs, and jokes;

In addition, sexual harassment is defined by the regulations of the Fair Employment and Housing Commission as unwanted sexual advances, or visual, verbal or physical conduct of a sexual nature.   Sexual harassment includes gender harassment and harassment on the basis of pregnancy, childbirth, or related medical conditions, and also includes sexual harassment of an employee of the same gender as the harasser.  This includes, but is not limited to, the following types of offensive behavior:

(1)  Unwanted sexual advances;

(2)  Offering employment in exchange for sexual favors;

(3)  Making or threatening reprisals after a negative response to sexual advances;

(4)  Visual  conduct,  including  leering,  making  sexual  gestures,  displaying  of  sexually

3

suggestive objects or pictures, cartoons, or posters;

(5)  Verbal conduct, including making or using derogatory comments, epithets, slurs, and jokes;

(6)  Verbal sexual advances or propositions;

(7)  Verbal abuse of a sexual nature, graphic verbal commentaries about an individual's body, sexually degrading words used to describe an individual, suggestive or obscene letters, notes, or invitations;

(8)  Physical conduct, including touching, assault, impeding or blocking movements.

(9)  Managers and supervisors are prohibited from providing favorable treatment to employees with whom they are involved with in a consensual sexual relationship.

(10)  All employees are prohibited from using nicknames or terms of endearment with a racial or sexual orientation.

Examples of sexual harassment include (a) an employee being fired or denied a job or an employment benefit because the employee refused to grant sexual favors or because he or she complained about the harassment; (b) an employee reasonably quitting his or her job to escape harassment; or (c) an employee being exposed to a hostile work environment.

The Company will take all reasonable steps to prevent harassment from occurring and will take immediate and appropriate action when the Company knows that unlawful harassment has occurred. The Union agrees to support the Company in maintaining a work environment free of harassment for employees.

Regardless of whether the action occurred on or off Company premises, if you believe that you have been harassed by a co-worker, supervisor, agent, vendor or customer, or if you believe that another employee has been harassed, you have a duty to promptly report the facts of the incident or incidents, and names of the individual involved, to your employer.  Any supervisory or managerial employee who receives such a complaint must promptly report it to the employer.

The matter will be immediately and thoroughly investigated, and confidentiality will be maintained to the extent possible.  After reviewing the evidence, a determination will be made concerning whether reasonable grounds exist to believe that harassment has occurred.  It is the obligation of all employees to cooperate fully in the investigation process.  The Company considers any harassing conduct to be a major offense which can result in disciplinary action for the offender, up to and including discharge.

The Company will take action to deter any future harassment.  In addition, disciplinary action will be taken against any employee who attempts to discourage or prevent another employee from bringing harassment to the attention of management.  The persons involved will be advised of the determination if appropriate.

The Company wants to assure all of it employees that measures will be undertaken to protect

4

those who complain about harassment from any further acts of harassment, coercion or intimidation, and from retaliation due to their reporting an incident or participating in an investigation or proceeding concerning the alleged harassment.

If any employee believes that the above procedure has not resolved his or her situation, that employee may contact the California Department of Fair Employment and Housing (DFEH) at (916) 445-9918 to determine the location of the branch of the DFEH that is nearest to the employee to file a claim within one year of the date that the harassment occurred. The DFEH serves as a neutral fact-finder and will attempt to assist the parties to voluntarily resolve their dispute. In the event that the DFEH is unable to obtain voluntary resolution and finds that harassment has occurred, the Fair Employment and Housing Commission (FEHC) may hold a hearing and award reinstatement, back pay, and monetary damages.

No action will be taken against any employee in any manner for opposing harassment or for filing a complaint with, or otherwise participating in an investigation, proceeding or hearing conducted by the DFEH or the FEHC with respect to harassment.

## SECTION 7
## NEW PRESSES, OR EQUIPMENT

7.1     If during the life of this Agreement presses or replacement equipment, the scale of wages applicable thereto and the manning schedule thereof, shall be determined by mutual consent of the parties, or on failure to agree, by procedures as provided in this Agreement.

7.2     If agreement is not reached prior to operation of the new equipment, such agreement must be reached within thirty (30) days of the initial operation.

7.3     If agreement cannot be reached at that time, the issue shall go to arbitration and any wage rate arrived at will be effective retro-actively to the date of initial operation of the equipment.

## SECTION 8
## REPORTING PAY

8.1     All full-time and part-time employees called in or allowed to go to work after the regular commencing time shall receive not less than four (4) hours straight time pay unless they have been notified the previous working day that there will be no work or less than a full day's work. In the latter case, they shall receive full wages for time worked with a minimum for four (4) hours, unless the employee is tardy or takes time off on their own volition.

8.2     The clause shall not apply where factors beyond the Company's control: such as fire, flood, explosion, earthquake, major mechanical breakdown, or Acts of God, or utility failure make it impossible to start or continue work.

8.3     An employee injured while working on the job and, therefore, unable to finish their day's work because of the injury, shall be paid for the scheduled day if sent home by the doctor or management.

5

## SECTION 9
## MINIMUM SHIFTS

9.1    All shifts shall be full shifts of eight (8) hours.  At the employer's discretion, shifts can be considered full shifts at four (4) hours.   Saturday shifts where a minimum of four (4) hours may be worked provided the employee agrees to work the short shift.

9.2    Employees shall be at their respective posts to begin work at the time their pay starts and shall not quit work in advance of the time their pay stops.

9.3    Any employee asked to work Saturday at overtime, but works Sunday at employees request will be paid according to the Saturday rate, should this be agreed upon by the Employer and the employee.

## SECTION 10
## HOURS OF EMPLOYMENT

10.1    Eight (8) hours, exclusive of time for lunch break which must be taken and follow California law requirements, will constitute a regular shifts work.

10.2    It is mutually agreed that five (5) established shifts of eight (8) hours Monday through Friday (exclusive of time for lunch) shall constitute a weeks work.   Nothing in this provision however shall be construed as limiting the operation of any plant to five (5) days per week.

10.3    Starting times shall be the same throughout the week.  However, an individual employee's starting time may be changed if the employee is notified no later than the end of their shift before any change in starting time, except in the case of emergency when normal staffing conditions cannot be maintained or when such advance notice cannot be given.

10.4    No employee may be called for work on other than his regular working hours until a rest period of (8) hours has elapsed after the completion of his regular shift.

10.5    The hours for day shifts to be between 5:00 a.m. and 6:00 p.m.

10.6    Any shift starting later than 3:00 p.m. shall be a first night shift.

10.7    Any shift starting later than 11:30 p.m. shall be a second night shift.

10.8    Starting Times.   The Employer may schedule designated employees to start work up to Two (2) hours before the established starting time of the shift provided the employee has been notified at least twelve (12) hours in advance of the change.  This provision shall not be construed as overtime and no employee shall be disciplined for refusing to accept the early starting time.

10.9    Employees working the first night shift shall be paid Seven Dollars ($7.00) per shift over the regular day rates.

6

10.10   Employees working the second night shift shall be paid Fourteen Dollars ($14.00) per shift over the regular day rates

10.11   In the event work cannot be performed Monday through Friday because of major mechanical breakdown, or other uncontrollable factors (see 8.2) employees may voluntarily make up such day on Saturday and shall be paid at the applicable straight time rate.

10.12   Lunch periods shall not be scheduled before three and one-half (3 1/2) hours of time worked or after four and one-half (4 1/2) hours of time worked and shall not exceed thirty (30) minutes in duration.   Modifications may be made with the mutual consent of the supervisor and the employee, in accordance to California State lunch laws.

## SECTION 11
## POSTING OF HOURS

11.1   Notices stating the time when work shall begin and end will be kept posted in the work area.   Start and quit can be based on the commute or personal consideration, upon agreement with the Employer and employee.

## SECTION 12
## STAND-BY

12.1   If at the direction of the employer, an employee is required to stand-by for a specified time, he shall be compensated for such time at the regular rate of pay as per the Agreement.

## SECTION 13
## CALL BACK

13.1   Any employee called back after the end of his normal shift shall receive a minimum of two (2) hours pay.   Such pay shall be computed at overtime rates and considered an extension of his regular shift plus any overtime worked.

## SECTION 14
## OVERTIME

14.1   All time in excess of the regular established shifts shall be overtime.   The rate of pay for overtime on regular shifts shall be one and one-half (1½) times the hourly straight time rate for the first four hours, double (2) the hourly straight time rate for the succeeding time thereafter.

14.2   All shifts worked on Saturday if 6th consecutive work day, will be paid one and one-half (1½) the regular straight time hourly rate for the first eight (8) hours worked, double (2) the regular straight time hourly rate for the following hours thereafter.   Sunday will be double (2) time if 7th consecutive work day, otherwise paid one and one-half (11/2) the regular straight time hourly rate. (See also Section 9.3)

14.3   For all work in excess of forty (40) hours in any one week. Hours missed from the regular schedule for union business or for such paid time off as, floating holidays, shall be considered as time worked for the purposes of determining weekly or daily overtime. Time missed as a result of

7

a Company decision shall be considered scheduled hours in this determination. An employee has to give employer advanced notification of vacation time off in order to meet the weekly overtime determination.

14.4    The employer will, if possible, notify employees who are scheduled to work overtime at least two hours prior to the overtime to be worked.  If such notice is not given, the Employer agrees to pay the actual cost of any meals taken at the employees expense as a result up to a maximum of $7.50.

14.5    Overtime shall be assigned according to the following priority:

a. The employee regularly operating or performing in the situation where the overtime is to be worked.

b. By seniority within present classification.

14.6    The Union and Employer have an obligation to protect the job security of the employees by meeting the demands of the customers. Overtime shall be scheduled when necessary, the employee is expected to work as called upon on a daily or Saturday basis when required.

14.7    Pension contributions are based on straight-time earnings.

14.8    Vacation pay, sick, bereavement, etc, are not considered "time worked" for the calculation of overtime

## SECTION 15
## HOLIDAYS

15.1    New Years Day, Presidents' Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving, the day after Thanksgiving, the day before Christmas and Christmas Day shall be recognized as holidays.  A holiday shall begin at 7:30 a.m. of the day itself or the legal day of observance and continue until 7:30 a.m. of the following day.

15.2    Regular employees shall be paid for one days straight-time at his regular rate of pay for such holidays (or the legal day of observance) when not worked.

15.3    Employees shall not be obliged to work on these holidays but the employee who does work on any holiday shall be paid for work performed at double (2) the employees straight time rate.

15.4    Holidays that fall on Saturday may, at the option of the Employer, be recognized on the Friday prior to the holiday.  Holidays that fall on Sunday shall be recognized on the Monday following the holiday.

15.5    When a holiday occurs in an employees vacation period the option of an extra days pay at straight time rate or an additional day of vacation with holiday pay shall be provided by mutual consent prior to vacation.

8

15.6  No employee shall receive holiday pay for a holiday which is immediately preceded by or followed by an unscheduled and unauthorized absence, or a disciplinary suspension.  Employees who have unscheduled absences due to illness, up to the previous day, or following a holiday shall bring a medical verification of illness to the employee's supervisor on the employee's return to work in order for the absence to be authorized.

15.7  Holiday pay shall be at eight (8) hours per shift rate for full-time employees.  The employee must have worked the day before and the day after a holiday to receive holiday pay or been on a pre-approved paid vacation or off work with prior employer consent.

## SECTION 16
## VACATION

16.1  A vacation schedule shall be established by the Employer and posted during the months of December and January.  Regular employees shall select their preference for vacation based on continuous seniority with the Employer and then by classification but in all cases the requirements of the Employer shall be considered.  Any changes after vacation selection shall only be by mutual consent. Probationary employees shall not get vacation pay.

16.2  Employees who have worked for their current same Employer one (1) year or more have preference in taking their vacation in one (1), two (2), three (3) or four (4) week periods provided that senior people select first for only one (1) period before less senior people have an opportunity to select their vacation.  Each additional period shall be considered a separate claim, which may be made after all other employees have had an opportunity to exercise their priority claim in a like manner.

16.3  Employees shall receive their vacation pay only in the amount commensurate with the time to be taken off, preceding the first day of their vacation.

16.4  Vacations shall not be cumulative from year to year without the written authorization of the Employer and the Union.  Vacation credits (money) shall not be converted to cash payments except by consent of employer. Vacation credits shall be converted to cash payments upon termination of employee.

16.5  Employees who have worked with their employer and completed one year shall receive one (1) weeks vacation with pay at their regular rate.

Employees who have worked with their employer and completed two (2) or more years but less than five (5) years shall receive two (2) weeks vacation with pay at their regular rate.

Employees who have worked with their employer and completed five (5) or more years shall receive three (3) weeks vacation with pay at their regular rate.

Employees who have worked with their Employer and completed ten (10) or more years shall receive four (4) weeks of vacation at their regular rate.

16.6  Regular employees who terminate service prior to a completed year of service with an

9

Employer will be paid the percentage of their straight time earnings as vacation pay as follows:

Those employees qualified for one (1) week of vacation 2.50%, two (2) weeks of vacation 5%, three (3) weeks of vacation 7.5%, four (4) weeks of vacation 10%.  Regular employees with less than 1 year completed earned at the time the vacation schedule is established earn time off on a pro-rated basis.

16.7    For the purpose of computing the one year and the percentage of earnings for regular employees, paid holidays and paid vacation days shall be considered as time worked and earned.

16.8    If a holiday occurs during an employees vacation period the employee shall be allotted an extra day of vacation with the holiday pay.

16.9    Should an employee covered by this Agreement die, the Employer shall pay over to the estate of the deceased, such vacation credits as had accrued upon a pro-rata basis.

16.10  If the employee was under a commercial or industrial contract which, hired before May 1, 2004, used wording for vacation time (worked in the industry), and now chooses to be in the sick leave program, the employee will have to forgo vacation time to be in line with the length of time you have worked for the same employer.

## SECTION 17
## BEREAVEMENT LEAVE

17.1    Employees shall be compensated for the loss of time from work in case of death in their immediate family (spouse, children, sibling, parent, grandparent, sister or brother) not to exceed three (3) days for attending the funeral or making necessary arrangements.

17.2    Employees shall be compensated for the loss of time from work in case of death of parent-in-law, and/or son-in-law or daughter-in-law not to exceed one (1) day.

17.3    An employee will not receive bereavement pay when it duplicates pay received for time not worked for any other reason or for weekends.

17.4    Part-time employees will be compensated on a pro-rata basis for loss of time from work for Bereavement Leave.

17.5    An employee must have been with the employer six (6) months before being granted bereavement pay.

## SECTION 18
## LEAVE OF ABSENCE

18.1    A leave of absence may be granted by the Employer not to exceed (90) days without loss of priority, provided the employee remains in good standing as a member of the Union; such leave shall be for bona fide reason(s) and shall be submitted in writing within a reasonable period of time in advance of the date on which the leave shall begin.  Leave of absence requests consistent with the Family/Medical Leave Act shall be granted.  During a leave of absence without

10

pay, an employee will not earn vacation, holiday or sick leave nor be eligible for any payments for time off work.

## SECTION 19
## INJURIES ON JOB

19.1    Employees injured on the job and visiting a doctor shall be paid for the full straight time shift on the day of injury if the doctor states that the employee should not return to work.  The employee agrees to notify the foreperson of extended absence.

19.2    Your employer will not be liable for the payment of workers' compensation benefits for an injury that arises out of an employee's voluntary participation in any off-duty recreational, social, or athletic activity that is not a part of the employee's work-related duties.

## SECTION 20
## SICK LEAVE

**20.1    Employees who work continuously for the same Employer and completed a period of one (1) year, shall then start to be included in the sick leave program, at the end of each year accrue two (2) days of sick leave and shall thereafter accrue one half (1/2) additional partial day of sick leave for each additional three (3) months of continuous work for such Employer.  Sick leave accrued under previous plans and unused will be the base and there shall be a 10 day limit to the amount of sick leave which may be accrued by any employee.**

20.2    Accrued sick leave shall be paid at the regular straight time rate of pay of the particular employee subject to the following conditions:

a.    Pay for sick leave shall be payable on the second day of bona fide illness if the employee is not hospitalized, or on the first day if hospitalized or if disabled through an accidental work related injury.  If the first day is without pay, employee can use a vacation day if so is earned.

b.    A certificate of an attending physician or other reasonable proof of illness may be required by the Employer.

c.    Accumulated sick leave shall not be convertible to cash or vacation time.

d.    No payment in lieu of sick leave shall be due upon termination, permanent lay-off or death.

e.    An employee absent due to illness or injury shall notify his Employer as soon as practicable of his expected availability for work.

f.    Sick leave shall not be paid in lieu of or in reduction of Worker's Compensation disability benefits or unemployment disability compensation.  Sick leave will be paid on a pro-rata basis in addition to any of the foregoing benefits which may otherwise be payable provided that an employee shall not receive, in a combination of such benefits and sick leave pay, more than his regular weekly salary, and provided further that if any pro-rate

sick leave payments total less than the sick leave then accrued, the remainder shall continue to be credited to the employee and available under the other provisions hereof. If during the period of a particular disability due to illness or a work related injury a court or administrative body shall determine that benefits otherwise payable would be reduced by reason of the payment for sick leave under this Agreement, then a payment for sick leave shall not be made in order that the employee may be enabled to recover the full amount of other benefits, and sick leave payments which might have been made shall be deferred and shall continue to the credit of the employee.

g.       No employee shall be discriminated against by lay-off or discharge for the purpose of avoiding pay for sick leave.

20.3    Part-time employees will accrue, on a pro-rata basis, sick leave pay.

20.4    <u>Integration</u>:  If an employee is collecting unemployment compensation disability benefits or Workers Compensation temporary disability benefits, or both, and such Unemployment Compensation Disability Benefits or Workers Compensation sick leave benefits provided herein, such employee shall only receive sick leave benefits in addition to such Unemployment Compensation Disability Benefits or Workers Compensation temporary disability benefits, or both, in an amount sufficient to equal a full days payment.

## SECTION 21
## DISCHARGE

21.1    The employer may effectively recommend discharge or disciplinary action for just cause which shall include but shall not be limited to the following:

a.       Incompetency.

b.       Neglect of duty.

c.       Violation of Employer rules which shall be kept conspicuously posted.

21.2    Any employee who feels he/she has been unjustly discharged must take the matter up within two (2) work days of their discharge by filing a written complaint stating the facts with the Shop Steward or Union Representative. Said two-day period of notification being construed as regular work days.

21.3    In all cases of discharge, the reason will be given if requested, in writing to the employee discharged within forty-eight (48) hours of the time of such request.

21.4    Notice to quit. Employees who have completed their probationary period and desire to quit, shall give the Employer two (2) weeks notice. Any employee who fails to give the required notice shall forfeit up to one (1) week of accumulated vacation pay. The Employer may, at his discretion, waive the two (2) week requirement and release the employee with all accumulated vacation pay.

## SECTION 22
## LENGTH OF SERVICE – LAYOFF AND RIGHTS OF RECALL

22.1    Continuous length of service in the bargaining unit with an Employer will determine seniority.  Seniority with the Company starts on the date of continuous employment in a Union classification upon completion of a ninety (90) calendar day probationary period.  Seniority shall not apply to an employee until that employee completes a ninety (90) calendar day probationary period with the Employer.

22.2    Regular employees are those who have completed their probationary period.

22.3    When layoffs because of lack of work for one week or more become necessary, the employer shall take into consideration (a) greater length of service, (b) competency and efficiency, (c) physical ability.  Factor (a) will govern the Employer's decision as to whom he will lay off, factors (b) and (c) being reasonably equal.

22.4    In the event of permanent layoffs pressmen, assistants, press helpers will have the option of downgrading, in order to maintain future employment, if they so choose, providing they are competent in the judgment of the employer.

22.5    Each Employer will maintain a list of employee employment dates by classification.  The employer agrees to submit to the Union a list of all bargaining unit employees on a quarterly basis.  Such list will include the names, social security number, classification, straight time wage, date of hire and shift of such employee.

22.6    The parties recognize that a factor essential to productivity is the flexibility in the assignment of bargaining unit personnel.  It is not the intent to limit this flexibility.  However, the parties recognize that an employee's seniority within the plant—consistent with production needs and the level of competency required in the particular job classification—shall be considered in the assignment of a shift as the opportunity for changes arise in the future.

An employee's seniority rights and the right of recall shall cease under any one of the following conditions:

(1)    Three (3) consecutive months after the employee's date of layoff;

(2)    If an employee voluntarily quits or resigns;

(3)    If the employee is discharged for cause;

(4)    If an employee fails to report for work or notify the Employer of their intention to report to work within twenty-four (24) hours being notified by a registered letter of recall from layoff;

(5)    Three (3) consecutive months after the employee is promoted outside the bargaining unit;

(6)    Failure to return to work within twenty-four hours after an approved leave of absence expires;

13

(7)     Absence for more than twelve (12) consecutive months by reason of illness or accident; or

(8)     Retirement.

(9)     An employee who takes employment in the printing industry during an approved leave of absence shall be considered as having voluntarily quit without employer approval.

In the meantime, nothing in the above shall interfere with the Employer's right to fill the job from any source on a temporary basis, and no health and welfare or retirement need be paid for temporary employees.

Nothing in the above shall interfere with the right of the Employer to transfer, move, or assign employees freely from one classification to another without regard to length of service.

22.7    An Employer may choose to be in the EDD approved Work Share Program.  The purpose of Work Share is to help the Company through financial hardships; the days off are not to be supplemented by vacation hours.

## SECTION 23
## SHIFT CHANGES

23.1   In the event of a permanent opening within the shop an employee shall make the request in writing through his Employer for the change in shift.

23.2   The preferred shift will be given to the employee in the order of their seniority and qualifications.

23.3   The Employer will evaluate existing employees prior to hiring new help.

## SECTION 24
## SHOP RULES AND BULLETIN BOARDS

24.1    All shop rules shall be posted by the Employer in a conspicuous place where they can be reached by the employees and such rules shall not conflict with this Agreement.

24.2    Space shall be provided on Employer property at locations agreed upon for Union Bulletin Boards for the posting of official Union business and such other notices.  (Dues, social events, etc.)

## SECTION 25
## SANITATION AND HEALTH

25.1    The Employer agrees to furnish a clean, healthful, sufficiently ventilated, properly heated and lighted place for performance of all work; and all machines or apparatus from which dust, gases, or other impurities are produced or generated shall be equipped in such a manner as to protect the health of the employees.

14

25.2   Safety devices where provided must be used and Safety Rules established by the Employer must be observed at all times.

25.3   Safety and sanitation shall however, be in accordance with the rules established by the State of California.

25.4   Employees shall assume their fair share of the responsibility in maintaining clean and sanitary conditions.

## SECTION 26
## CHAPEL MEETINGS

26.1   Meetings may be held on the Employer's time with the consent of the Employer or his representative.

## SECTION 27
## CHANGE OF OWNERSHIP

27.1   In the event of change of ownership, the selling Employer shall pay all obligations under the terms of the Agreement, including accumulated wages, holiday pay, vacation pay, pension contributions and health and welfare contributions, prior to the date of the change of ownership.

## SECTION 28
## OFFICIALS RIGHT TO VISIT

28.1   An accredited representative of the Union shall be permitted to enter the premises of the Employer during working hours for the purposes consistent with this Agreement provided that he/she first makes application at the businesses office for such permission prior to entering the plant and provided further that he/she does not interfere with production.

## SECTION 29
## SAVINGS CLAUSE

29.1   Should any part hereof, or any provisions herein contained be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by any decree of a court of competent jurisdiction, such invalidation of such part, or portion of this Agreement, shall not invalidate any remaining portions, which shall continue in full force and effect.

## SECTION 30
## STRUCK WORK

30.1   The Employer agrees not to require employees to perform any work normally executed, wholly or in part, by employees working for any Employer whose plant is struck by Graphic Communications International Union or where members of the Local are locked out, other than work which the Employer herein customarily has performed for the Employer involved in such strike or lockout.

30.2  The provisions of this section shall become effective only after twenty-four (24) hours notice

15

of strike or lock-out is given by the Union to the Employer in writing.  This provision is not applicable unless the strike is authorized by the G.C.I.U.

30.3  It is agreed that there shall be no strikes, walkouts, lockouts, slowdowns, or other similar interruptions of work during the period of the Agreement.

## SECTION 31
## WESTERN STATES INCOME SECURITY FUND

31.1     The Employer and the Union hereby accept, ratify and become bound by the terms of that certain Trust Agreement establishing the Western States Income Security Fund as amended, the same as though they were signatory parties thereto.

31.2     Effective October 1, 2013, the Employer shall pay monthly to the Western States Income Security Fund the sum of Thirty five dollars ($35.00) per month for each employee working or paid for One hundred & twenty (120) hours or more per month

| Effective | 7/1/2014 | $ 35.00 |
|-----------|----------|---------|
|           | 7/1/2015 | $ 35.00 |
|           | 7/1/2016 | $ 35.00 |
|           | 7/1/2017 | $ 35.00 |
|           | 7/1/2018 | $ 35.00 |

31.3   Payments shall be made in a manner prescribed by the Board of Trustees and shall be paid monthly for payroll financial weeks ending in the previous month recognizing Monday as the first day of the week.  Shifts are defined to include shifts worked, vacation, sick leave, holiday shifts or any other shifts paid for under the contract.

31.4   Under no circumstances, however, shall any contributions be made by the Employer on behalf of any employee for any period of time during which such employee shall be on strike, shall participate in a concerted refusal to work for such Employer, or shall be absent from work by observance of a picket line, or by other work stoppage or refusal to work for such Employer.

31.5   The employer has the right to leave the Western States Income Securities Fund, but must put all eligible employees into the company 401 (k) Plan.

## SECTION 32
## VARIABLE SUPPLEMENTAL CONTRIBUTIONS

32.1   Classification

There shall be eight (8) classifications of employees under this Agreement.  Classification is based upon seniority under the Collective Bargaining Agreement.

Class I        Employees who elect to have Employer base contributions only.

Class II       Employees with less than one (1) year of employment.

16

Class III    Employees with at least one (1) but less than three (3) years of employment.

Class IV    Employees with at least three (3) but less than five (5) years of employment.

Class V     Employees with at least five (5) but less than seven (7) years of employment.

Class VI    Employees with at least seven (7) but less then ten (10) years of employment.

Class VII   Employees with at least ten (10) but less than twelve (12) years of employment.

Class VIII  Employees with at least twelve (12) years of employment.

32.2    Changes in Class

Each employee may submit annually to the Employer any classification change request. Such request may designate an eligible class based on years of employment or a class lower (but not greater) than his eligibility, and must be received by the Employer between May 1 and June 15, prior to its effective date. Upon approval by the Employer, such classification changes shall be effective July 1.

32.3    Classification change notifications shall be in writing on an approved form and in accordance with the rules and regulations adopted by the Fund. Upon notification by the Employer to the plan administrator of an approved classification change, the Employer shall pay wages and pension contributions as prescribed in the approved classification level unless and until notified of a subsequent classification change. In no event, however, shall a classification change be implemented except by proper notification to the Fund, and no more than one (1) classification change may be effected during any calendar year.

32.4    Wage and Pension Rates

The total hourly wage and supplemental pension rate shall be 100% of the hourly job classification rate (100% of the employee's rate of pay). Wages shall be paid directly to the employee. Pension contributions shall be paid directly to the administrative office of the Western States Income Security Fund ("Fund") on such report forms as may be specified by the Fund from time to time. The total hourly wage and pension rate specified above shall be payable to the extent it does not exceed the following:

| Classification | Wages | Fund |
|---|---|---|
| Class I | 100% | 0% of hourly classification rate. |
| Class II | 98% | 2% of hourly classification rate. |
| Class III | 96% | 4% of hourly classification rate. |
| Class IV | 94% | 6% of hourly classification rate. |
| Class V | 92% | 8% of hourly classification rate. |
| Class VI | 90% | 10% of hourly classification rate. |
| Class VII | 88% | 12% of hourly classification rate. |
| Class VIII | 85% | 15% of hourly classification rate. |

17

32.5    If any contribution rate specified above would cause the Fund to be in violation of Internal Revenue Code Section 415, then the contribution rate to the Fund shall be revised by the Union and the Employer so as to comply with the code.

## SECTION 33
## HEALTH AND WELFARE

33.1    The Employer and the Union hereby accept, ratify and become bound by the terms of that certain Agreement and Declaration of Trust dated October 2, 1952, as amended, establishing the Printing Specialties and Paper Products Joint Employer and Union Health and Welfare Fund the same as though they were signatory thereto.

33.2    Medical, Dental, Vision and Prescription Drug Plans: Effective with the October 2013 payment on September 2013 hours, the Employer will contribute monthly to the Printing Specialties and Paper Products Joint Employer and Union Health and Welfare Fund up to the below-listed amounts required by the trust for each eligible Employee (and his or her dependents) working or paid for eight (80) hours or more per month. All payment changes shall be effective on July of each year covering June hours in that year.

| Effective | Rate |
|---|---|
| 7/1/2013 | $1432.02 |
| 7/1/2014 | $1571.71 Projected max rate |
| 7/1/2015 | To be determined by Trustees |
| 7/1/2016 | To be determined by Trustees |
| 7/1/2017 | To be determined by Trustees |
| 7/1/2018 | To be determined by Trustees |

33.3    The Teamsters Managed health care trust amounts required by the trust for each eligible employee (his or her dependents) working or paid for one hundred and twenty (120) hours or more per month. All payment changes shall be effective on October of each year covering September hours in that year.

| Effective | Rate |
|---|---|
| 10/1/2012 | $1144.00 |
| 10/1/2013 | $1220.65 |
| 10/1/2014 | To be determined by Trustees |
| 10/1/2015 | To be determined by Trustees |
| 10/1/2016 | To be determined by Trustees |
| 10/1/2017 | To be determined by Trustees |

33.4    The employer shall have the right to obtain eligible employee coverage elsewhere as proposed.

33.5    Those with outside Printing Specialties and Paper Products or Teamsters plan shall have an employee co-pay of premium.

18

July 1, 2013 – 20%     July 1, 2014 – 20%
July 1, 2015 – 20%     July 1, 2016 – 20%
July 1, 2017 - 20%

33.6   Adjustments for New Legislation. If enactment of new legislation providing for State or National Health Insurance, catastrophic insurance, or the like or a change in the Internal Revenue Code substantially adversely affects either the after-tax costs of the plan to the employer (including any new taxes or loss of deductibility in whole or in part of its contributions, or other adverse tax treatment of its costs) or the benefits provided to the employees (or the tax treatment of their contributions through the Section 125 Plan), then either the Union or the Employer may, upon written notice to the other at any time after such adverse change, reopen this Agreement for the sole purpose of negotiating an amendment to the provisions of this Article dealing with a new or revised health and welfare plan program, wages and pensions.

33.7   Employer doesn't have to pay for employees spouse health care coverage when there is dual health insurance coverage within the family.

## SECTION 34
## JOINT CONCILIATION COMMITTEE

34.1   Adjustment of Complaints.  If any dispute, complaint or grievance arises between the parties to this Agreement as a result of the application or interpretation of any of its provisions which cannot be adjusted between the Union and the Employer, the matter may within seven (7) days be referred to a Board of Arbitration composed of two (2) representatives designated by the Employer and two (2) representatives designated by the Union.  If within five (5) days thereafter these four members of the Board cannot reach a settlement of the dispute, complaint or grievance they shall within two (2) days thereafter select a 5th member of the Board, and this Board shall proceed forthwith to adjudication of the matter at issue within three (3) days unless a further extension of time is mutually agreed upon.  A majority vote of the five members of the Board on such matter at issue shall be final and binding upon the two parties, both of whom hereby agree to abide by all decisions of the Board of Arbitration.

34.2   Wage claims which do not arise out of a dispute as to the application or interpretation of this Agreement need not be processed under this arbitration section.

34.3   The expenses attendant upon any proceedings which are incurred by direction of the Board of Arbitration shall be borne equally by the parties of this Agreement.

## SECTION 35
## GOVERNMENT REGULATIONS

35.1   If during the term of this Agreement, government regulations pertaining to the energy crisis make it necessary for the Employer and employee to alter his normal operating procedure and thus limit the ability to observe the conditions of this Agreement, particularly as they might affect hours of employment, days of employment or similar restrictive measures, the Union will meet with the Employer to work out an agreement that will allow compliance with the regulations.

19

## SECTION 36
## FEMININE/MASCULINE GENDER

36.1    Wherever in this Agreement the masculine gender is used, it shall be deemed to include the feminine gender as well.

## SECTION 37
## APPRENTICES AND TRAINING

37.1    Based on the employees experience, the progressive wage rates for the respective assignments shall be as follows:

All pre-press and press departments rates shall be based on the following schedule:

Pre-Press and Pressroom departments

| | | | | | |
|---|---|---|---|---|---|
| Up to 6 months experience | | | 65% of appropriate rate | | |
| "     12     "          " | | | 70% "          "          " | | |
| "     18     "          " | | | 75% "          "          " | | |
| "     24     "          " | | | 80% "          "          " | | |
| "     30     "          " | | | 85% "          "          " | | |
| "     36     "          " | | | 90% "          "          " | | |
| "     42     "          " | | | 95% "          "          " | | |
| Thereafter | | | 100% "          "          " | | |

Bindery and Finishing Departments:

| | | | | | |
|---|---|---|---|---|---|
| Up to 6 months experience | | | 80% of appropriate rate | | |
| "     12     "          " | | | 90% "          "          " | | |
| "     18     "          " | | | 95% "          "          " | | |
| "     24     "          " | | | 100% "          "          " | | |

SERVICE PRESS                                    TEAMSTERS DISTRICT COUNCIL 2
                                                 LOCAL 388M

_____                          _____

Date: _06/16/14_____                            Date: _____

20

**Memorandum of Agreement**

**Between**

**Teamsters District Council 2, Local 388M**
**(The Union)**

**And**

**Service Press**
**(The Company)**

The Union and the Company agree to replace Article 34 Retirement Plan in the CBA with the following:

**Article 34  Supplemental Income 401(k) Plan**
Section 34    The Employer agrees to become a participating employer in the Supplemental Income 401(k) Plan ("SIP Plan") effective February 1, 2014 and be bound by the provisions of the Plan's governing documents.  As of the effective date, Employer agrees to contribute to the Plan for each covered Employee* per month the sum of $35.00, which amount is payable no later than 15 days following the end of the month for which the contributions are due.  Employer understands that the Plan has an Internal Revenue Code Section 401(k) feature and agrees that any covered Employee may elect to have a specified percentage of his/her wages (up to the maximum permitted by the Plan) deducted from his/her total wages and contributed to the Plan. Amounts deferred from Employee wages must be paid to the Plan no later than 15 days following the date of the payroll from which the deferrals were made.

*Employee's become eligible after 90 days of continuous employment.

Teamsters District Council 2

Date:  7-7-14

Service Press,
San Carlos, CA                     Keith
                                   Thompson

Date:  07/21/14

21

Memorandum of Agreement

Between

Teamsters District Council 2, Local 388M
(The Union)

And

Service Press
(The Company)

The Union and the Company agree to replace Article 34 Retirement Plan in the CBA with the following:

Article 34  Supplemental Income 401(k) Plan

Section 34    The Employer agrees to become a participating employer in the Supplemental Income 401(k) Plan ("SIP Plan") effective September 1, 2014 and be bound by the provisions of the Plan's governing documents.  As of the effective date, Employer agrees to contribute to the Plan for each covered Employee* per month the sum of $35.00, which amount is payable no later than 15 days following the end of the month for which the contributions are due.  Employer understands that the Plan has an Internal Revenue Code Section 401(k) feature and agrees that any covered Employee may elect to have a specified percentage of his/her wages (up to the maximum permitted by the Plan) deducted from his/her total wages and contributed to the Plan. Amounts deferred from Employee wages must be paid to the Plan no later than 15 days following the date of the payroll from which the deferrals were made.

*Employee's become eligible after 90 days of continuous employment.

Teamsters District Council 2

Date: 9/9/14

Service Press
San Carlos, CA

Date: 09/08/14

Keith Thompson

| CLASSIFICATION | CURRENT RATE | ↑ 2⅜% 10/01/2013 | RATE | ↑ 1% 10/01/2014 | RATE | ↑ 2% 10/01/2015 | RATE | ↑ 1% 10/01/2016 | RATE | ↑ 2% 10/01/2017 | RATE | ↑ TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PREPRESS | | | | | | | | | | | | |
| Digital | | | | | | | | | | | | |
| 1   Digital Technician | | | | | | | | | | | | |
| Desktop applications, | | | | | | | | | | | | |
| Proofing, Preflighting, | | | | | | | | | | | | |
| Digital Press Operator, | | | | | | | | | | | | |
| Copier (B/W and Color), | | | | | | | | | | | | |
| Scanning, Design, | | | | | | | | | | | | |
| Platemaker & Typesetting | $21.93 | $0.44 | $22.37 | $0.22 | $22.59 | $0.45 | $23.04 | $0.23 | $23.27 | $0.47 | $23.74 | $1.81 |
| 2   Advanced Digital | $25.87 | $0.52 | $26.39 | $0.26 | $26.65 | $0.53 | $27.18 | $0.27 | $27.46 | $0.55 | $28.01 | $2.14 |
| 3   Digital Finishing. | $15.61 | $0.31 | $15.92 | $0.16 | $16.08 | $0.32 | $16.40 | $0.16 | $16.57 | $0.33 | $16.90 | $1.29 |
| | | | | | | | | | | | | |
| PRESSES | | | | | | | | | | | | |
| 1 Color | | | | | | | | | | | | |
| Up to 17" | $18.68 | $0.37 | $19.05 | $0.19 | $19.24 | $0.38 | $19.63 | $0.20 | $19.83 | $0.40 | $20.22 | $1.54 |
| 18" thru 20" | $21.80 | $0.44 | $22.24 | $0.22 | $22.46 | $0.45 | $22.91 | $0.23 | $23.14 | $0.46 | $23.60 | $1.80 |
| 21" thru 26" | $22.53 | $0.45 | $22.98 | $0.23 | $23.21 | $0.46 | $23.67 | $0.24 | $23.91 | $0.48 | $24.39 | $1.86 |
| 27" thru 31" | $23.25 | $0.47 | $23.72 | $0.24 | $23.95 | $0.48 | $24.43 | $0.24 | $24.68 | $0.49 | $25.17 | $1.92 |
| 32" thru 41" | $23.96 | $0.48 | $24.44 | $0.24 | $24.68 | $0.49 | $25.18 | $0.25 | $25.43 | $0.51 | $25.94 | $1.98 |
| | | | | | | | | | | | | |
| 2 Color | | | | | | | | | | | | |
| Up to 17" | $20.42 | $0.41 | $20.83 | $0.21 | $21.04 | $0.42 | $21.46 | $0.21 | $21.67 | $0.43 | $22.11 | $1.69 |
| 18" thru 20" | $23.54 | $0.47 | $24.01 | $0.24 | $24.25 | $0.49 | $24.74 | $0.25 | $24.98 | $0.50 | $25.48 | $1.94 |
| 21" thru 26" | $26.29 | $0.53 | $26.82 | $0.27 | $27.08 | $0.54 | $27.63 | $0.28 | $27.90 | $0.56 | $28.46 | $2.17 |
| 27" thru 31" | $27.73 | $0.55 | $28.28 | $0.28 | $28.57 | $0.57 | $29.14 | $0.29 | $29.43 | $0.59 | $30.02 | $2.29 |
| 32" thru 41" | $29.19 | $0.58 | $29.77 | $0.30 | $30.07 | $0.60 | $30.67 | $0.31 | $30.98 | $0.62 | $31.60 | $2.41 |

| CLASSIFICATION | CURRENT RATE | ↑ 2% 10/01/2013 | RATE | ↑ 1% 10/01/2014 | RATE | ↑ 2% 10/01/2015 | RATE | ↑ 1% 10/01/2016 | RATE | ↑ 2% 10/01/2017 | RATE | ↑ TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PRESSES | | | | | | | | | | | | |
| 4 Color | | | | | | | | | | | | |
| Up to and including 20" | $25.79 | $0.52 | $26.31 | $0.26 | $26.57 | $0.53 | $27.10 | $0.27 | $27.37 | $0.55 | $27.92 | $2.13 |
| 21" thru 26" | $27.45 | $0.55 | $28.00 | $0.28 | $28.28 | $0.57 | $28.84 | $0.29 | $29.13 | $0.58 | $29.72 | $2.27 |
| 27" thru 31" | $29.89 | $0.60 | $30.49 | $0.30 | $30.79 | $0.62 | $31.41 | $0.31 | $31.72 | $0.63 | $32.36 | $2.47 |
| 32" thru 41" | $30.39 | $0.61 | $31.00 | $0.31 | $31.31 | $0.63 | $31.93 | $0.32 | $32.25 | $0.65 | $32.90 | $2.51 |
| | | | | | | | | | | | | |
| 5 Color | | | | | | | | | | | | |
| Up to and including 20" | $26.83 | $0.54 | $27.37 | $0.27 | $27.64 | $0.55 | $28.19 | $0.28 | $28.48 | $0.57 | $29.04 | $2.21 |
| 21" thru 26" | $28.96 | $0.58 | $29.54 | $0.30 | $29.83 | $0.60 | $30.43 | $0.30 | $30.74 | $0.61 | $31.35 | $2.39 |
| 27" thru 31" | $30.10 | $0.60 | $30.70 | $0.31 | $31.01 | $0.62 | $31.63 | $0.32 | $31.95 | $0.64 | $32.58 | $2.48 |
| 32" thru 41" | $31.70 | $0.63 | $32.33 | $0.32 | $32.66 | $0.65 | $33.31 | $0.33 | $33.64 | $0.67 | $34.32 | $2.62 |
| | | | | | | | | | | | | |
| 6 Color thru 8 Color | | | | | | | | | | | | |
| Up to and including 20" | $26.83 | $0.54 | $27.37 | $0.27 | $27.64 | $0.55 | $28.19 | $0.28 | $28.48 | $0.57 | $29.04 | $2.21 |
| 21" thru 26" | $28.96 | $0.58 | $29.54 | $0.30 | $29.83 | $0.60 | $30.43 | $0.30 | $30.74 | $0.61 | $31.35 | $2.39 |
| 27" thru 31" | $30.10 | $0.60 | $30.70 | $0.31 | $31.01 | $0.62 | $31.63 | $0.32 | $31.95 | $0.64 | $32.58 | $2.48 |
| 32" thru 41" | $31.70 | $0.63 | $32.33 | $0.32 | $32.66 | $0.65 | $33.31 | $0.33 | $33.64 | $0.67 | $34.32 | $2.62 |
| | | | | | | | | | | | | |
| Feeder/Helper | $18.68 | $0.37 | $19.05 | $0.19 | $19.24 | $0.38 | $19.63 | $0.20 | $19.83 | $0.40 | $20.22 | $1.54 |
| | | | | | | | | | | | | |
| Cylinder/Letterpress | | | | | | | | | | | | |
| Up to and including 40" | $21.81 | $0.44 | $22.25 | $0.22 | $22.47 | $0.45 | $22.92 | $0.23 | $23.15 | $0.46 | $23.61 | $1.80 |

23

| CLASSIFICATION | CURRENT RATE | ↑ 2% 10/01/2013 | RATE | ↑ 1% 10/01/2014 | RATE | ↑ 2% 10/01/2015 | RATE | ↑ 1% 10/01/2016 | RATE | ↑ 2% 10/01/2017 | RATE | ↑ TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BINDERY/FINISHING | | | | | | | | | | | | |
| 1 General Bindery | | | | | | | | | | | | |
| Worker | $12.01 | $0.24 | $12.25 | $0.12 | $12.37 | $0.25 | $12.62 | $0.13 | $12.75 | $0.25 | $13.00 | $0.99 |
| 1 Floor Help | $11.65 | $0.23 | $11.88 | $0.12 | $12.00 | $0.24 | $12.24 | $0.12 | $12.36 | $0.25 | $12.61 | $0.96 |
| 2 Cutter, Folder | | | | | | | | | | | | |
| Operator | $20.19 | $0.40 | $20.59 | $0.21 | $20.80 | $0.42 | $21.22 | $0.21 | $21.43 | $0.43 | $21.86 | $1.67 |
| 3 Inserter-Stitcher- | | | | | | | | | | | | |
| Trimmer, Perfect | | | | | | | | | | | | |
| Binder Operator | $21.91 | $0.44 | $22.35 | $0.22 | $22.57 | $0.45 | $23.02 | $0.23 | $23.25 | $0.47 | $23.72 | $1.81 |
| 5 Mailing Operator | $12.49 | $0.25 | $12.74 | $0.13 | $12.87 | $0.26 | $13.12 | $0.13 | $13.26 | $0.27 | $13.52 | $1.03 |
| 6 Operator/Data Proc. | $15.61 | $0.31 | $15.92 | $0.16 | $16.08 | $0.32 | $16.40 | $0.16 | $16.57 | $0.33 | $16.90 | $1.29 |
| 7 Feeder/Sorter | $10.40 | $0.21 | $10.61 | $0.11 | $10.71 | $0.21 | $10.93 | $0.11 | $11.04 | $0.22 | $11.26 | $0.86 |
| | | | | | | | | | | | | |
| *Rate increase does not apply to employees who are above contract rates | | | | | | | | | | | | |

24

GCIU-Employer Retirement
Fund, et. al. v. Service Press, Inc.

EXHIBIT 2 to COMPLAINT - 94



# TEAMSTERS DISTRICT COUNCIL 2

7825

Affiliated with the Graphic Communications Conference-International Brotherhood of Teamsters
Affiliated Local Unions 388M, 747M, 28N, 541S, 543M, 625S

DEC 1 0 2015

**Main Business Office**
710 E. Commonwealth Avenue, Fullerton, CA 92831-3842
(714) 447-3382  Fax (714) 447-3385  (800) 333-4388

**Northern California/Colorado/Utah/Nebraska**
6111 Southfront Rd., Suite R, Livermore, CA 94551
(925) 960-1295  (925) 960-1297  Fax (925) 960-1285  (800) 333-4388

**Oregon/Washington/Idaho**
2233 N. Lombard, Portland, OR 97217-5737
(503) 285-0529  Fax (503) 283-4801  (800) 333-4388

## ADDENDUM

Between

## Service Press
San Carlos, CA

And

## Teamsters District Council 2 Affiliated with the Graphic Communications Union International Brotherhood of Teamsters
Local 388M

October 1, 2013 – September 30, 2018

### SECTION 32
Graphic communications International Union – Employer Fund

32.1   The Employer and the Union hereby acknowledge that they have received and read the Trust Agreement governing the GCIU-Employer Retirement Fund (as amended to date) and the GCIU-Employer Retirement Fund Benefit Plan (as amended to date) and they hereby agree to be bound by the terms and provision of said Trust Agreement and Said Retirement Benefit Plan, as they now exist or may hereafter be amended.  The Employer and Union hereby accept, as their representative on the Retirement Fund, The Employer Trustees and Labor Organization Trustees now serving and their duly appointed successors.

32.2   Effective May 2013 the Employer shall pay to the GCIU/Employer Retirement Fund the amount of forty three dollars and thirty cents ($43.30) per month, for each employee who, in the immediate preceding month, worked or was paid for eighty (80) hours or more hours.

32.3   The parties agree that the provisions of this section shall be binding and in full force and not subject to change for the term of the Collective Bargaining Agreement between the parties.

32.4   It is understood that the contributions to the Fund are a deductible business expense by the Employer for income tax purposes.

_____
The Company

12/01/15
_____
Date

_____
The Union

11-20-15
_____
Date

GCIU-Employer Retirement
Fund, et. al. v. Service Press, Inc.

EXHIBIT 2 to COMPLAINT - 95

# EXHIBIT 3

GCIU-Employer Retirement
Fund, et. al. v. Service Press, Inc.

EXHIBIT 3 to COMPLAINT - 96

 **GCIU - Employer Retirement Fund**

*Newspaper, Commercial Printing, and Printing Specialties & Paper Products Industries*

2323 Eastlake Ave E Seattle WA 98102 • (800) 322-1489 • Formerly IP&GCU-Employer Retirement Fund

January 2, 2020

Service Press, Inc.
Attn: Keith Thompson
935 Tanklage Rd.
San Carlos, CA 94070

<u>**Via Registered Mail**</u>

Re:   <u>Notice of 2018 Complete Withdrawal Liability and Demand for Payment</u>
        Service Press, Inc. (7825)

Dear Mr. Thompson:

We understand that Service Press, Inc. has withdrawn from participation in the Plan, thus effectuating a complete withdrawal from the GCIU-Employer Retirement Fund ("Fund") as defined by Section 4203 of the Employee Retirement Income Security Act ("ERISA"). Please allow this letter to serve as a formal notice of withdrawal liability and demand for payment as required by ERISA Section 4219.

In accordance with ERISA and the Fund's Withdrawal Liability Procedures, the Fund's actuaries determined that the withdrawal liability attributable to Service Press, Inc. is $127,728. Detail regarding the calculation is set forth on Exhibits 1 and 2 enclosed with this letter. A payment schedule as required by ERISA Section 4219(c) is set forth on Exhibit 1 enclosed with this letter. Demand is hereby made that Service Press, Inc. make payments in accordance with the enclosed schedule.

You may either make payment in accordance with the enclosed monthly payment schedule or in a lump sum. Exhibit 1 shows the calculation of the monthly payment amount as well as the starting and ending payment dates.

You may also choose to make a lump sum, present value payment. The present value of 240 monthly payments of $102.50 is $18,857 (rather than the full assessment of $127,728). Please be advised that Service Press, Inc. can elect to pay the present value of the withdrawal liability assessment by remitting payment in the amount of $18,857 within 60 days from the date of this letter.

Service Press, Inc.
Mr. Keith Thompson
January 2, 2020
Page 2

If you choose to make monthly payments, you may still satisfy your obligation with a lump sum payment at a future date.  The present value will be calculated based on remaining payments at that time.

Please be advised that by accepting payment in the form of a lump sum, the Fund is in no way waiving its rights and obligations under ERISA Sections 4041A and 4219(c)(1) to reassess withdrawal liability to Service Press, Inc. in the event of a "mass withdrawal."

Any request for review or objection to the assessment pursuant to ERISA Section 4219(b)(2), must be made within 90 days of receipt of this notice and demand.  Please also note the time restrictions imposed by ERISA Section 4221 regarding arbitration apply to this withdrawal liability assessment and demand.  This letter is intended as notice of withdrawal liability and demand for payment to all commonly controlled entities as provided by ERISA Section 4001(b)(1) and the regulations promulgated thereunder.

**Finally, please note that this notice of assessment is based on the Fund's understanding that Service Press, Inc. does not have any other contributing affiliates to the Plan.  If the Fund's understanding is not correct, you must notify the Fund immediately with the names and addresses of these other contributing employer groups so that the Fund can review the information for a possible correction to this assessment.**

Should you have any questions or comments, please do not hesitate to contact us.

Sincerely,

*Douglas D. Wisman*

Douglas D. Wisman
Compliance Manager for Administrator

Enclosures
cc:     GCC/IBT Local 388-M, DC 2

Exhibit 1

## GCIU - Employer Retirement Fund
### Calculation Details for 2018 Complete Withdrawal Liability

Employer Name: **SERVICE PRESS, INC.**

### Determination of Complete Withdrawal Liability

| Year ended December 31 | Unamortized Balance of Withdrawal Liability Pools | | Contributions During 5-Year Period Ending On Date Pool Established | | Liability Allocated |
|---|---|---|---|---|---|
| | Basic Pools | Reallocated Pools | Total Plan Net Contributions | Employer Contributions | [(5) / (4)] x [(2) + (3)] |
| (1) | (2) | (3) | (4) | (5) | (6) |
| 2006 | $ 224,067,355 | $ - | $ 108,033,896 | $ 1,277 | $ 2,649 |
| 2007 | 29,854,941 | 336,086 | 104,568,358 | 1,364 | 394 |
| 2008 | 263,516,705 | 3,350,548 | 100,271,099 | 1,602 | 4,264 |
| 2009 | (56,679,613) | 18,139,220 | 90,698,072 | 1,783 | (758) |
| 2010 | 38,403,145 | 25,433,611 | 76,123,444 | 2,119 | 1,777 |
| 2011 | 484,587,822 | 74,137,664 | 56,658,659 | 2,406 | 23,726 |
| 2012 | 303,314,600 | 61,308,913 | 52,517,542 | 2,406 | 16,705 |
| 2013 | (11,595,390) | 98,050,629 | 43,113,082 | 2,450 | 4,913 |
| 2014 | 55,248,329 | 118,503,863 | 39,446,726 | 2,658 | 11,708 |
| 2015 | 401,493,213 | 101,474,059 | 35,047,022 | 2,713 | 38,935 |
| 2016 | 237,391,232 | 194,551,529 | 34,268,945 | 2,814 | 35,469 |
| 2017 | (66,581,306) | 3,913,221 | 30,764,782 | 4,330 | (8,820) |
| Totals | $ 1,903,021,033 | $ 699,199,343 | | | $ 130,962 |

Allocation of liability associated with Adjustable Benefits

| | | | | | |
|---|---|---|---|---|---|
| 2017 | 56,147,009 | | 30,764,782 | 4,330 | 7,902 |

| | | | |
|---|---|---|---|
| A | Gross liability: Sum of Column 6 | $ | 138,864 |
| B | De minimis threshold | | 50,000 |
| C | De minimis reduction: $100,000 + (B) - (A), but not greater than (B) nor less than zero | | 11,136 |
| D | Net Withdrawal Liability: (A) - (C), but not less than zero | $ | 127,728 |

### Determination of Payment Schedule

| | | | |
|---|---|---|---|
| E | Highest Contribution Rate  (during years 2009 - 2018) | | 2.50 |
| F | Highest Consecutive 3 Year Average Contribution Base Units  (during years 2008 - 2017) | | 492 |
| G | Annual Withdrawal Liability Payment: (E) x (F) | $ | 1,230.00 |
| H | Monthly Payments Starting January 1, 2019 | $ | 102.50 |
| I | Number of Years for Full Annual Payment in Amortization of Withdrawal Liability Assessment | | 20 |
| J | Number of Full Monthly Payments in Final Year | | 0 |
| K | Final Payment Date | | 12/01/2038 |
| L | Final Payment Amount | $ | 102.50 |

GCIU2018-WL-Service Press.xlsx

GCIU-Employer Retirement Fund, et. al. v. Service Press, Inc.

EXHIBIT 3 to COMPLAINT - 99

12/23/2019

GCIU - Employer Retirement Fund
Withdrawal Liability Calculation
Backup Data

SERVICE PRESS,INC.

| | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Contributions (Data Provided)** 7825 SERVICE PRESS,INC. | 258.15 | 258.80 | 258.80 | 258.80 | 258.80 | 324.75 | 497.95 | 440.58 | 586.42 | 547.70 | 324.72 | 541.20 | 649.44 | 649.45 | 649.44 | 1,427.28 | 1,407.25 |
| **Total** Five Year Totals | 258.15 | 258.80 | 258.80 | 258.80 | 258.80 1,277.00 | 324.75 1,364.00 | 497.95 1,602.00 | 440.58 1,780.00 | 586.42 2,119.00 | 547.70 2,456.00 | 324.72 2,466.00 | 541.20 2,450.00 | 649.44 2,608.00 | 649.45 2,713.00 | 649.44 2,814.00 | 1,427.28 3,840.00 | 1,407.25 5,196.00 |
| **Shift Rate (Data Provided)** 7825 SERVICE PRESS,INC. | | | | | | | | | | | | | | | | | |
| **Total (Calculated)** Highest Rate | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.01 | 1.10 | 1.15 | 1.25 | 2.00 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 |
| | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.00 | 1.01 | 1.10 | 1.15 | 1.25 | 2.00 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 |
| **Contribution Base Units [Shifts × Contributions/Shift Rate]** 7825 SERVICE PRESS,INC. | 258.15 | 258.80 | 258.80 | 258.80 | 258.80 | 324.75 | 497.95 | 435.22 | 541.29 | 476.26 | 259.78 | 268.19 | 259.78 | 259.78 | 259.78 | 736.98 | 562.90 |
| **Total** Three Year Average Five Year Average | 258.15 | 258.80 | 258.80 | 258.80 | 258.80 | 324.75 | 497.95 361.00 325.00 | 435.22 452.00 356.00 | 541.29 482.00 412.00 | 476.26 466.00 435.00 | 259.78 428.00 442.00 | 268.19 332.00 395.00 | 259.78 260.00 359.00 | 259.78 260.00 303.00 | 259.78 260.00 260.00 | 736.98 419.00 355.00 | 562.90 |
| **Hours (Data Provided)** 7825 SERVICE PRESS,INC. | 1,715.00 | 1,802.00 | 1,865.00 | 1,838.00 | 1,826.00 | 2,473.00 | 3,560.00 | 3,200.00 | 4,000.00 | 3,520.00 | 1,920.00 | 1,680.00 | 1,920.00 | 1,920.00 | 1,920.00 | 4,374.00 | 3,912.00 |
| **Total** | 1,715.00 | 1,802.00 | 1,865.00 | 1,838.00 | 1,826.00 | 2,473.00 | 3,560.00 | 3,200.00 | 4,000.00 | 3,520.00 | 1,920.00 | 1,680.00 | 1,920.00 | 1,920.00 | 1,920.00 | 4,374.00 | 3,912.00 |

GCIU2018-WL-Service Press.xlsx

Exhibit 2

12/23/2019

GCIU-Employer Retirement
Fund, et. al. v. Service Press, Inc.

EXHIBIT 3 to COMPLAINT - 100

# USPS Tracking®

**FAQs >**

## Track Another Package +

Remove ✕

**Tracking Number:** RE516948958US

Your item was delivered to an individual at the address at 10:38 am on January 9, 2020 in SAN CARLOS, CA 94070.

## ✓ Delivered

January 9, 2020 at 10:38 am
Delivered, Left with Individual
SAN CARLOS, CA 94070

Get Updates ∨

Feedback

---

**Text & Email Updates** ∨

---

**Tracking History**

**Product Information**

---

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _John_  ☐ Agent  ☐ Addressee<br>B. Received by ( Printed Name )  C. Date of Delivery<br>JOHN McCoeAs  1-9-20<br>D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No |
| 1. Article Addressed to:<br><br>_Service Press, Inc._<br>_Attn: Keith Thompson_<br>_935 Tanklage Rd._<br>_San Carlos, CA  94070_ | 3. Service Type<br>☐ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)  ☐ Yes |
| 2. Article Number<br>(Transfer from service label)  RE 516948958 US | |
| PS Form 3811, August 2001  Domestic Return Receipt | 102595-01-M-2509 |

EXHIBIT 8 TO COMPLAINT

GCIU-Employer Retirement Fund, et. al. v. Service Press, Inc.

https://tools.usps.com/go/TrackC

# EXHIBIT 4



# GCIU - Employer Retirement Fund

**Newspaper, Commercial Printing, and Printing Specialties & Paper Products Industries**

2323 Eastlake Ave E Seattle WA 98102 • (800) 322-1489 • Formerly IP&GCU-Employer Retirement Fund

March 4, 2020

Service Press, Inc.
Attn: Keith Thompson
935 Tankage Rd.
San Carlos, CA  94070

**VIA CERTIFIED MAIL**
#7000-0520-0016-4712-1668

Re:     Notice of Failure to Pay Withdrawal Liability and Demand for Cure
        Service Press, Inc. (7825)

Dear Mr. Thompson:

Please allow this letter to serve as a notice of failure to pay withdrawal liability and demand for cure in accordance with Section 4219(c)(5) of the Employee Retirement Income Security Act ("ERISA").

By letter dated January 2, 2020, the GCIU-Employer Retirement Fund ("Fund") provided a formal notice of withdrawal liability and demand for payment.  The letter enclosed a payment schedule. According to our records, Service Press, Inc. has not remitted any of its withdrawal liability payments to the Plan.

Please be advised if payment in accordance with the schedule is not made in full within 60 days of your receipt of this letter, Service Press, Inc. will be in default of its withdrawal liability assessment. Should that occur, the entire assessment and interest shall be immediately due.

This notice and demand for cure is intended as notice and demand to Service Press, Inc. and all commonly controlled entities as provided by ERISA Section 4001(b)(1) and the regulations promulgated thereunder.

Thank you for your attention to this issue.  Should you have any questions or comments, please do not hesitate to contact me.

Sincerely,

*Douglas D. Wisman*

Douglas D. Wisman
Compliance Manager for Administrator

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Service Press, Inc.
Attn: Keith Thompson
935 Tankage Rd.
San Carlos, CA  94070

9590 9402 5454 9189 2823 51

2. Article Number (Transfer from service label)

7000-0520-0016-9712-1668

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

# USPS Tracking®

FAQs ›

## Track Another Package +

**Tracking Number:** 70000520001647121668

Remove ✕

Your item was delivered to an individual at the address at 11:53 am on March 9, 2020 in SAN CARLOS, CA 94070.

## ✓ Delivered

March 9, 2020 at 11:53 am
Delivered, Left with Individual
SAN CARLOS, CA 94070

**Get Updates** ∨

Feedback

---

**Text & Email Updates**                                                    ∨

---

**Tracking History**                                                        ∨

---

**Product Information**                                                      ∨

---

**See Less** ∧

# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

**FAQs**

Feedback

GCIU-Employer Retirement
Fund, et. al. v. Service Press, Inc.

EXHIBIT 4 to COMPLAINT - 106

https://tools.usps.com/go/TrackConfirmAction?tRef=fullpage&tLc=2&text28777=&tLabe...   3/25/2020